IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOE CLARK MITCHELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | NO. 1:93-0073 |
| v. ) | JUDGE HAYNES |
| ) | |
| JOHN REES, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Before the Court is Petitioner's motion for equitable relief under Fed.R.Civ.P. 60(b)(6) (Docket Entry No. 151), seeking to set aside this Court's final judgment in this action that is predicated upon a Sixth Circuit decision, Mitchell v. Rees, 114 F.3d 571 (6th Cir. 1997) ("Mitchell I") that has been overruled by Harries v. Bell, 417 F.3d 631, 635 (6th Cir. 2005) and Abdur' Rahman v. Bell, 226 F.3d 696, 705-06 (6th Cir. 2000). Petitioner contends that absent that erroneous decision and based upon an earlier evidentiary hearing, this Court would have granted the writ for the state prosecutor's violation of Batson v. Kentucky, 476 U.S. 79 (1986). In sum, Petitioner contends that extraordinary circumstances are present that seriously question the integrity of this Court's judgment that if not corrected, would result in "a judicial travesty," (Docket Entry No. 151, Motion at p. 1, quoting Mitchell I, 114 F.3d at 583. (Keith, J. dissenting)). As the legal bases for his motion, Petitioner relies upon 28 U.S.C. §2243, Fed.R.Civ.P. 60(b), Gonzalez v. Crosby, 545 U.S. ___, 125 S.Ct. 2641 (2005), and the Court's inherent equitable authority under Article III, Section 2 of the United States Constitution.

In his response, the Respondent contends, in sum: (1) that Petitioner's motion serves as a substitute for an appeal and impermissibly challenges the Sixth Circuit's rulings; (2) that the

extraordinary circumstances required by Gonzalez are not shown here; (3) that Petitioner could have sought relief in his subsequent appeal, Mitchell v. Rees, 36 Fed.Appx. 752 (6th Cir. 2002) ("Mitchell II"): and (4) that 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA") operates as a limitation on this Court's authority to grant the relief sought here. Finally, Respondent argues that Mitchell I is "irrelevant" in light of Mitchell II and cannot form a basis for relief because the basis for Mitchell II was procedural default, not the district court's authority to order an evidentiary hearing.

For the reasons set forth below, the Court concludes that Petitioner's Rule 60(b) motion satisfies the requirements of Gonzalez. The Court also concludes that special circumstances are present and failure to renew the Court's judgment would result in a miscarriage of justice in that Petitioner would be serving a life sentence based upon the verdict of a racially tainted jury.

### A. Federal Procedural History

Joe Clark Mitchell, an African-American, was convicted by an all-white jury in Maury County, Tennessee for several offenses. During the voir dire of the jury, the state prosecutor struck Hattie Alderson, an African-American juror, from the panel of prospective jurors. After exhaustion of his state court remedies, Petitioner filed this habeas action that included a claim for the state prosecutor's violation of Batson. The Honorable Thomas A. Higgins, district judge, dismissed Petitioner's claims except for his Batson claim for which Judge Higgins ordered an evidentiary hearing.

The undersigned, as the then magistrate judge, conducted the evidentiary hearing and concluded that although Petitioner made a prima facie showing of a Batson violation, Petitioner had not proved the prosecutor's reasons to be pretextual. Upon consideration of Petitioner's objections

to that report and recommendation, Judge Higgins conducted a de novo review and after detailed findings of fact, concluded that the record established a Batson violation.[1] (Docket Entry Nos. 85 and 86, Memorandum and Order).

In sum, at the evidentiary hearing, District Attorney Mike Bottoms testified that he struck Ms. Alderson, because she "appeared to be an elderly lady," who would not be able to follow the evidence in the case, but he "probably" struck her because she was elderly. (Docket Entry No. 67, Evidentiary Hearing transcript pp. 14, 22, 24, 25). In Bottoms' view, "there was something about [Alderson's] appearance that bothered me." Id. at 35, 36. Bottoms, however, never asked any specific questions of Alderson nor did he strike white jurors who were older than Alderson including Robert Hardison, who was 11 years older than Alderson, id. at 38; and William Brown, who was 6 years older than Alderson Id. at 46. In addition, jurors Ms. John Petty and Sarah Graff, were also older than Alderson Id. at 40, 41. Bottoms insisted that "I know I had a good reason" for striking Alderson. Id. at 52.

In detailed findings, quoted infra, Judge Higgins, concluded, in sum: (1) that Mitchell demonstrated a prima facie case of race discrimination; (2) that the State proffered a race-neutral explanation for striking Alderson; but (3) that Bottoms' explanation that Alderson was struck because of her age was "not worthy of belief." (Docket Entry No. 85, Memorandum at pp. 6-9). Judge Higgins granted habeas corpus relief, subject to a new trial. (Docket Entry No. 86).

On appeal, in Mitchell I, the Sixth Circuit reversed and held that absent a satisfactory showing under 28 U.S.C. § 2254(d), the district court lacked the authority to order an evidentiary

---

[1] In addition to his stellar career as a district judge, Judge Higgins is also a Fellow of the American College of Trial Lawyers.

3

hearing on Petitioner's Batson claim. Given Mitchell's failure to demonstrate cause and prejudice for his failure to develop the evidentiary record on his Batson claim in the state courts, the Sixth Circuit ruled that the state court's ruling on the Batson claim controlled. 114 F.3d at 577-78. The Sixth Circuit affirmed dismissal of Petitioner's other claims except for his claim for ineffective assistance of counsel for failing to raise the Batson claim either at trial or on direct appeal. Id. at 579. The Sixth Circuit stated that if Mitchell could satisfy Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), on his Batson claim and if his Baston claim possessed merit, then Plaintiff could be entitled to relief on his related ineffective assistance of counsel claim. Id. at 579 n.13. The Sixth Circuit remanded Mitchell's Batson related ineffective assistance of counsel claim for failure to raise a Baston claim to the district court for further proceedings, consistent with its opinion. Id. at 579.

Upon remand, the parties filed motions for summary judgment and those motions were referred to the undersigned, as then magistrate judge, who recommended that the writ be granted for Petitioner's trial counsel's ineffectiveness and the Batson violation. (Docket Entry No. 130). Judge Higgins adopted those recommendations, (Docket Entry No. 134), that Mitchell's trial counsel's was ineffective for his failure to assert a Batson challenge and the prosecutor's failure to state on the record any reason for his strike of the black juror established cause and prejudice to excuse any procedural default. (Docket Entry Nos. 130 and 134). See also Mitchell II, 36 Fed.Appx. at 753. Accordingly, Judge Higgins awarded the writ, subject to the State's retrial of the Petitioner. (Docket Entry No. 134).

In Mitchell II, the Sixth Circuit reversed and quoted the Tennessee appellate court's opinion that "'the lack of evidence on the Baston issue does not justify this Court in upsetting the judgment entered in the original cases.'" Mitchell II, 36 Fed.Appx. at 754. The Sixth Circuit deemed this

4

language "to be a finding of fact that was 'fairly supported' by the state court record." Id. (citing Mitchell I, 114 F.3d at 578-79). The Sixth Circuit reasoned that Mitchell's counsel's cited ineffectiveness in raising the Baston issue at trial or appeal could not be cause for the ineffectiveness of Mitchell's state post-conviction counsel. The Sixth Circuit also noted that:

> The district court's conclusion that the state court record demonstrates ineffective assistance of counsel with regard to the Batson issue necessarily depends on the record's demonstrating the existence of a meritorious Batson claim. The state appellate court that reviewed the dismissal of Mitchell's post-conviction petition found that "the lack of evidence on the Batson issue does not justify this Court in upsetting the judgment entered in the original cases," and in Mitchell I, we held that to be a finding of fact that was "fairly supported" by the state court record. Id. at 578-79. The district court was not free to overrule our conclusion.

36 Fed.Appx. at 753-54 (footnote on ineffectiveness of counsel omitted).

Petitioner argues that Abdur' Rahman and Harries reversed Mitchell I and reiterated the precedents for Judge Higgins' earlier Order for an evidentiary hearing on Petitioner's Batson claim.

In Abdur' Rahman, the Sixth Circuit stated:

> Mitchell's statement that a district court is without authority to order an evidentiary hearing in the absence of one of the exceptions listed in § 2254(d) is overbroad in that it fails to recognize the inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact. This court has previously recognized this principle. See Sims v. Livesay, 970 F.2d 1575, 1579 (6th Cir.1992) (quoting Townsend for the proposition that a district judge's power to receive evidence on a habeas petitioner's constitutional claim is only constrained by his sound discretion). Other Circuits have likewise recognized this inherent discretion. See Seidel v. Merkle, 146 F.3d 750, 754-55 (9th Cir.1998); Clemmons v. Delo, 124 F.3d 944, 952 (8th Cir.1997); Pagan v. Keane, 984 F.2d 61, 63-65 (2d Cir.1993).

Abdur' Rahman, 226 F.3d at 706; accord Harries, 417 F.3d at 635 ("Warden Bell relies on this court's holding in *Mitchell* ...But as we recognized in *Abdur' Rahman*... *Mitchell* conflicts with Sixth Circuit and Supreme Court precedent.")(citations omitted).

5

In these circumstances, Petitioner contends that with an evidentiary hearing, the record would establish intentional race discrimination by the state prosecutor. Petitioner's motion argues that his imprisonment for life based upon such racial discrimination presents a miscarriage of justice that the Court should remedy.

### B. Conclusions of Law

As a threshold matter, the Court disagrees with the Respondent's contention that Petitioner's motion is a substitute for an appeal. In <u>Mitchell II</u>, the Sixth Circuit instructed the district court to enter an order of dismissal. "We REMAND this matter with instructions to the district court to enter judgment denying the petition for a writ of habeas corpus." 36 Fed.Appx. at 754 (emphasis in the original). Judge Higgins entered the Order of dismissal that was this Court's "Final Judgment". (Docket Entry No. 144). A Rule 60(b) motion addresses the district court's judgment and must be presented initially to the district court. 12 James Wm. Moore, et al., <u>Moore's Federal Practice</u> §60.60[1] and authorities cited therein. Thus, the Respondent's Rule 60(b) motion challenges a judgment of this Court and is properly before this Court.

Petitioner asserts multiple legal bases for relief as well as a constitutional challenge to § 2244. The latter challenge is that to the extent that section bars the relief sought here, § 2244 is an unconstitutional restraint on the exercise of the Court's inherent and longstanding authority over its judgments under Article III, Section 2 of the Constitution.[2] Of Petitioner's legal contentions, the

---

[2] Petitioner cites Article III, Section 2 of the Constitution as granting a federal court plenary equitable power to revisit its own judgment as being within a district court's "inherent power ... over its own judgments." <u>Bronson v. Schulten</u>, 104 U.S. (14 Otto) 410, 417 (1881). Chief Justice John Marshall stated that this authority arises where a new development "clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself" before judgment. <u>Marine Ins. Co. of Alexandria v. Hodason</u>, 11 U.S. (7 Cranch) 332, 336 (1813). Accordingly, where the "equity of the applicant [is] free from doubt,"

6

Court addresses first the applicability of Rule 60(b) and Gonzalez. If these authorities are applicable and favorable to Petitioner, resolution of his constitutional challenge to Section 2244 is rendered moot. The Supreme Court has cautioned avoidance of any unnecessary decisions on constitutional issues. See Immigration and Naturalization Service v. St. Cyr, 533 U.S. 289, 300-01 (2001).

In Gonzalez, the Supreme Court addressed the availability of equitable relief under Fed.R.Civ.P. 60(b) in a habeas action. In essence, Gonzalez concluded that "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. §2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules." 125 S.Ct. at 2646. (footnote omitted). Moreover, "AEDPA did not expressly circumscribe the operation of Rule 60(b)." Id. The Supreme Court recognized that a Rule 60(b) motion that is in effect a successive habeas petition does not qualify for relief under Rule 60(b).

> In some instances, a Rule 60(b) motion will contain one or more "claims." For example, it might straightforwardly assert that owing to "excusable neglect," Fed. Rule Civ. Proc. 60(b)(1), the movant's habeas petition had omitted a claim of constitutional error, and seek leave to present that claim. Cf. Harris v. United States,

---

and where a judgment "would be against conscience for the person who has obtained it to avail himself," the judgment can be revised. Id. at 337. A noted historical commentator observed that "one of the most striking and distinctive features of Courts of Equity is that they can adapt their decrees to all the varieties of circumstances which may arise." Joseph Story, Commentaries On Equity Jurisprudence As Administered In England And America, §28, 14th ed. (Boston: Little, Brown & Co., 1918, W.H. Lyon, ed.) p. 24. As to habeas actions, "[a]ll the authorities agree that res judicata does not apply to applications for habeas corpus." Darr v. Burford, 339 U.S. 200, 214-215 (1950). "[C]ourts must be kept open to guard against injustice through judicial error." Id. "Since 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require'. Rev.Stat. §761, superseded by 28 U.S.C. §2243". Prieser v. Rodriguez, 411 U.S. 475, 487 (1973) (quoting Peyton v. Rowe, 391 U.S. 54, 66-67 (1968). "All the freedom of equity procedure is thus prescribed; and substantial justice, promptly administered, is ever the rule in habeas corpus." Storti v. Massachusetts, 183 U.S. 138, 143 (1901). Section 2243 is substantively identical to the 1874 version of Rev. Stat. §761 discussed in Storti. See Wingo v. Wedding, 418 U.S. 461, 468-469 (1974).

7

367 F.3d 74, 80-81 (C.A.2 2004) (petitioner's Rule 60(b) motion sought relief from judgment because habeas counsel had failed to raise a Sixth Amendment claim). Similarly, a motion might seek leave to present "newly discovered evidence," Fed. Rule Civ. Proc. 60(b)(2), in support of a claim previously denied. E.g., Rodwell v. Pepe, 324 F.3d 66, 69 (C.A.1 2003). Or a motion might contend that a subsequent change in substantive law is a "reason justifying relief," Fed. Rule Civ. Proc. 60(b)(6), from the previous denial of a claim. E.g., Dunlap v. Litscher, 301 F.3d 873, 876 (C.A.7 2002). Virtually every Court of Appeals to consider the question has held that such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly. E.g., Rodwell, supra, at 71-72; Dunlap, supra, at 876.

We think those holdings are correct.

Id. at 2647.[3]

The Court also concluded that a habeas petitioner may not invoke Rule 60(b) to present a new constitutional claim for habeas corpus relief, because to do so would "circumvent[] AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." Id. at 2647.

Gonzalez limits relief under Rule 60(b) to certain circumstances: (1) where the petitioner is not challenging the denial of a constitutional "claim" "on the merits"; and/or (2) where the Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." 125 S.Ct. at 2648. Within that standard, Gonzalez allows a habeas petitioner to invoke Rule 60(b) to alter a district court judgment on a procedural issue that erroneously precluded a determination of the substantive merits of a petitioner's habeas claim.

---

[3] Prior to Gonzalez, in McQueen v. Scroggy, 99 F.3d 1302, 1335 (6th Cir. 1996) on a Rule 60(b) motion asserting newly discovered evidence in support of a previously-denied constitutional claim, the Sixth Circuit agreed with other Circuits and held that a "Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition and therefore is subject to a cause and prejudice analysis."

8

> The term 'on the merits' has multiple usages. See e.g., Semtek Int'l Inc v. Lodkheed Martin Corp., 531 U.S. 497, 501-503, 149 L.Ed.2d 32, 121 S.Ct. 1021 (2001). We refer here to a determination that there exist or do not exist grounds entitling a petition to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. <u>He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error-for example a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar</u>.

125 S.Ct. at 2648 n.4 (emphasis added).

A qualifying Rule 60(b) motion was described in In Re Abdur' Rahman, 392 F.3d 174, 180 (6th Cir. 2004)(en banc),[4] as where the motion reflects "reason to doubt the integrity of a habeas judgment." Such a motion is proper under Rule 60(b), if the motion "attacks the manner in which the earlier habeas judgment was procured." Id. at 177.

The Court concludes Mitchell's motion qualifies under Gonzalez as a non-claim motion. First, the motion requests an evidentiary hearing that Mitchell I and Mitchell II denied him. This motion raises a procedural issue and "<u>merely asserts that a previous ruling which precluded a merits determination was in error</u>." Gonzalez, 125 S.Ct. at 2648 n.4 (emphasis added). In addition, Petitioner's motion "attacks the manner in which the earlier habeas judgment was procured." Abdur' Rahman, 392 F.3d at 177.

Second, applying Gonzalez, standard in light of Abdur' Rahman and Harries, Mitchell I's holding on the evidentiary hearing issue "was in error". See Harries, 417 F.3d at 635 ("Warden Bell relies on this court's holding in *Mitchell* ...But as we recognized in *Abdur' Rahman*... *Mitchell* conflicts with Sixth Circuit and Supreme Court precedent.") (citations omitted), accord Abdur'

---

[4] Abdur'Rahman was subsequently vacated by the Supreme Court in light of Gonzalez and remains pending in the Sixth Circuit on remand. See Bell v. Abdur'Rahman, 125 S.Ct. 2991 (2005).

9

Rahman, 226 F.3d at 706.

Third, applying In re Abdur'Rahman, this Court's final judgment, if left undisturbed, casts "reason to doubt the integrity of a habeas judgment." 392 F.3d at 180. "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others'". Batson, 476 U.S. at 87-88 (quoting Staider voiced Virginia,100 U.S. 303, 308 (1880) with other citations omitted). Such discrimination constitutes reversible error. Castaneda v. Partida, 430 U.S. 482, 492, 501 (1977).

As reflected in Abdur'Rahman and Harries, Mitchell I was contrary to Supreme Court precedent. Mitchell II relied upon Mitchell I and did not address the impact of Abdur' Rahman. This Court's current final judgment permits a life sentence based upon the verdict of a racially tainted jury and is contrary to Supreme Court and Sixth Circuit precedents. These circumstances give "reason to doubt the integrity of a habeas judgment" and justify review of that judgment of this Court.

Respondent cites the procedural default holding of Mitchell II that Petitioner did not demonstrate cause and prejudice to warrant an evidentiary hearing. Keeney, however, expressly authorizes an evidentiary hearing without a showing of cause or prejudice, where the failure to do so would result in a miscarriage of justice.[5] "We also adopt the narrow exception to the cause-and-

---

[5]Under Sixth Circuit precedent, the district court is authorized to hold an evidentiary hearing to determine factual issues or if an inadequate record exists on a procedural default controversy, that was raised in Mitchell I. See Alcorn v. Smith, 781 F.2d 58, 60 (6th Cir. 1986).

10

prejudice requirement: A habeas petitioner's failure to develop a claim in state-court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." Keeney, 504 U.S. at 11-12. Harries cited Keeney in stating that Mitchell I was contrary to Supreme Court precedent. 417 F.3d at 635. To uphold a life sentence tainted by racial discrimination qualifies as a miscarriage of justice under Keeney.

In sum, because the Mitchell decisions are contrary to Supreme Court precedent, this Court's final judgment is also contrary to Supreme Court precedents. Given the recent and clear availability of this Rule 60(b) option under Gonzalez, the only practical procedure to correct this "judicial travesty" is a Rule 60(b) motion.

Gonzalez, however, also requires the Rule 60(b) motion to satisfy the other conditions in its subsections, including a showing of "'extraordinary circumstances' justifying the reopening of a final judgment." 125 S.Ct. at 2649 (citations omitted). For the reasons stated earlier on the integrity of the final judgment, absent a modification of this judgment, the Court concludes that "extraordinary circumstances" for the purposes of Rule 60(b)(6) are established. Moreover, an inconsistent application of the law that deprives a party of a right accorded to other similarly situated parties presents, "extraordinary circumstances" warranting post-judgment relief, including under Rule 60(b)(6). See e.g., Gondeck v. Pan American World Airways Inc., 382 U.S. 25, 26-27 (1965)(granting post-judgment relief on rehearing, in the interest of justice to remedy a misinterpretaion of the law); Cincinnati Insurance Co. v. Byers, 151 F.3d 574, 580 (6th Cir. 1998)(extraordinary circumstances based upon a post-judgment change in the law); Overbee v. Van Waters & Rogers, 765 F.2d 578, 580 (6th Cir. 1985)(finding extraordinary circumstances and

11

granting relief from judgment based on intervening decision of Ohio Supreme Court); Jackson v. Sok, 65 Fed.Appx. 46, 49 (6th Cir. 2003)(per curiam)(upholding grant of Rule 60(b) motion based on intervening change in the applicable law).

To be sure, Respondent argues that Gonzalez states that a change in the law is not an extraordinary circumstance for Rule 60(b). On this issue, the Supreme Court stated:

> Petitioner contends that Artuz's change in the interpretation of the AEDPA statute of limitations meets this description. We do not agree. The District Court's interpretation was by all appearances correct under the Eleventh Circuits's then-prevailing interpretation of 28 U.S.C. § 2244(d)(2). <u>It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation. Although our constructions of federal statutes customarily apply to all cases then pending on direct review</u>, see, e.g., Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), <u>not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final</u>.

125 S.Ct. at 2650. (emphasis added).

This language in Gonzalez applies if the cited change in the law arose after Petitioner's habeas judgment became final. Based upon Mitchell I and Mitchell II, Petitioner's habeas proceeding was not final until March 4, 2002, when Judge Higgins entered the final judgment of dismissal. (Docket Entry No. 144). Thus, Abdur' Rahman was decided before the judgment in this action became final. Moreover, Petitioner could not have sought relief in Mitchell II based on Abdur'Rahman because Mitchell could not have filed a Rule 60(b) motion under Fed.R.Civ.P. 60(b) under McQueen, 99 F.3d at 1335. In Re Abdur'Rahman, 392 F.3d 174 (6th Cir. 2004)(en banc) overruled McQueen, but that decision never became final, because the Sixth Circuit stayed the mandate on January 6, 2005. See No. 3:96cv0380, Docket Entry No. 307 (M.D. Tenn. Order entered January 11, 2005). The Supreme Court subsequently vacated and remanded Abdur 'Rahman for reconsideration in light of Gonzalez. See Bell v. Abdur'Rahman, 545 U.S. ___ 125 S.Ct. 2991

12

(2005). It was not until the Supreme Court's June 2005 decision in Gonzalez that Mc Queen was effectively overruled to allow Mitchell to file his present motion. Mitchell has promptly sought relief in light of the circumstances and in light of Gonzalez.

As to Respondent's other arguments to preclude relief on this motion, Respondent asserts that Petitioner could have sought this relief based upon Abdur 'Rahman during his appeal in Mitchell II. The district court's Order giving rise to Mitchell II was entered on May 12, 1999. Abdur' Rahman was decided on September 13, 2000. By that time, Petitioner was before the Sixth Circuit and could not advance a theory on appeal that was not presented to the district court. Logan v. Denny's Inc., 259 F.3d 558, 570 (6th Cir. 2001); Taft Broad Co. v. United States, 929 F.2d 240, 243-45 (6th Cir. 1991). Although an exception to this rule exists, the exception is limited to a "purely legal issue." Logan, 259 F.3d at 270 n.6. Petitioner's motion raises a combination of factual and legal issues. As discussed earlier, any Rule 60(b) motion had to be presented first to the district court and given the appeal in Mitchell II, the district court was without jurisdiction to act. Petitioner could not have sought relief from judgment under Fed.R.Civ.P. 60(b) until the Supreme Court's June 2005 decision in Gonzalez, by which McQueen was effectively overruled.

Respondent next contends that Mitchell I is "irrelevant" and cannot form a basis for relief because Mitchell II was decided on procedural default grounds. Mitchell II, however, discussed Mitchell I and the district court's reliance upon the earlier hearing transcript discussed in Mitchell I. 36 Fed.Appx. at 753. Mitchell II cited Mitchell I as the basis for its reversal of the district court on Petitioner's Batson claim. As the Sixth Circuit stated:

> The district court's conclusion that the state court record demonstrates ineffective assistance of counsel with regard to the Batson issue necessarily depends on the record's demonstrating the existence of a meritorious Batson claim. The state appellate court that reviewed the dismissal of Mitchell's post-conviction petition

13

found that "the lack of evidence on the Batson issue does not justify this Court in upsetting the judgment entered in the original cases," and in Mitchell I, we held that to be a finding of fact that was "fairly supported" by the state court record. Id. at 578-79. The district court was not free to overrule our conclusion.

36 Fed.Appx. at 753-54 (footnote on ineffectiveness of counsel omitted). Mitchell I and Mitchell II are both predicated on the holding that the district court's order to conduct the evidentiary hearing was error. This contention is without merit.

Thus, the Court concludes the Mitchell's Rule 60(b) motion qualifies under Gonzalez and satisfies the other requirements of Rule 60(b)(6). The next issue is whether to grant the evidentiary hearing.

This Court can order an evidentiary hearing if "a fundamental miscarriage of justice would result from failure to hold an evidentiary hearing." Keeney, 504 U.S. at 11-12. For the reasons stated earlier, the circumstances of this action represent a miscarriage of justice. To remedy that miscarriage of justice requires the consideration of the transcript of the evidentiary hearing ordered by Judge Higgins. Neither party cites the need for any further proceeding beyond the consideration of the transcript of that hearing.

After a review of that record, the Court adopts the factual findings and the conclusions of law of Judge Higgins as this Court's ruling on the merits of the Petitioner's Batson claim.

> The evidence before the Court indicates that the respondent's explanation for the peremptory challenge of the black jurors,[5] Ms. Alderson, is pretextual and the petitioner has carried his burden of proving purposeful discrimination. During the evidentiary hearing, the prosecutor, Mr. Bottoms, testified that he struck Ms. Alderson because of her elderly appearance, as he believed that she would be unable to follow the evidence in the case.[6] Transcript of evidentiary hearing (filed June 1, 1995; Docket Entry No. 67) at 22. He further testified that the reason he challenged Ms. Alderson was "probably" because she was elderly. Id. at 24-25. Because a discriminatory intent is not inherent in this explanation, the respondent's reason is deemed to be racially neutral. See Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 406.

14

> n.5 The only other black juror was excused by the trial court for cause after Ms. Alderson was peremptorily struck by the respondent
>
> n.6 Mr. Bottoms explained that the State's case consisted of circumstantial evidence. Transcript of evidentiary hearing (filed June 1, 1995; Docket Entry No. 67) at 22.

However, the evidence before the Court leads to the conclusion that this racially neutral explanation, however characterized, is not worthy of belief. As an initial matter, it is undisputed that Mr. Bottoms failed to strike white jurors who were older than Ms. Alderson. Although the evidence indicates that Mr. Bottoms was unaware of the jurors' specific ages, the Court notes that a number of the white jurors who were not challenged by Mr. Bottoms were older than Ms. Alderson, one of whom was eleven years older. See transcript at 38-41.

Furthermore, Mr. Bottoms did not identify any objective criteria upon which to base his conclusion that Ms. Alderson was unable to follow the evidence because of her elderly appearance. Specifically, he did not indicate that she looked particularly frail or infirm in any way which might signify a physical condition which would render her less able to follow the course of the trial. Rather, Mr. Bottoms acknowledged that he could not specify what aspect of Ms. Alderson's appearance led him to conclude that she would be unable to follow the evidence. Id. at 35-36. Likewise, he admitted that he could not recall anything about her demeanor.[7] Id. at 51.

> n.7 Unfortunately, Mr. Bottoms was unable to locate his file containing his trial notes on his reasons for striking Ms. Alderson.

Mr. Bottoms' questions during voir dire examination support an inference of discriminatory purpose. See Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. For example, it is significant that Mr. Bottoms asked Ms. Alderson no questions individually, relying solely upon her responses to questions directed to a group of three jurors which included Ms. Alderson. Transcript at 32-34. Mr. Bottoms acknowledged that the only question Ms. Alderson answered differently from the other two jurors was with regard to her experience of serving on many juries.[8] Id. at 46, 51. Nonetheless, a white juror in this group, Ms. Stephens, who was slightly over one year younger than Ms. Alderson, was not challenged by Mr. Bottoms.[9] Id. at 43.

> n.8 The Court notes that Ms. Alderson's extensive previous jury service might be considered to be a variable which would enhance her ability to understand and follow court proceedings.

15

> n.9 Although not challenged by the state, Ms. Stephens was apparently struck by the defendant.

Furthermore, Mr. Bottoms failed to ask Ms. Alderson any questions concerning her health, physical condition, mental state or general ability to follow the court proceedings. Although Mr. Bottoms did not know Ms. Alderson's age and claimed to have concerns due to her elderly appearance, he failed to ask her any questions to elicit her age or other information relevant to his concerns. He did not ask any questions to determine whether her age, physical condition or health would have an impact on her ability to serve as a juror.

Moreover, the conclusion that the respondent's proffered neutral explanation is pretextual is further supported by Mr. Bottoms' reliance on general assertions and his failure to recall precisely why he concluded Ms. Alderson would be unable to follow the evidence. It is curious that Mr. Bottoms' trial notes documenting his reasons for striking Ms. Alderson are nowhere to be found,[10] although other parts of the trial file were located. In addition, Mr. Bottoms testified that two other prosecutors tried the case and participated in the voir dire and that all three prosecutors agreed on the peremptory strikes. Id. at 21. Despite this fact, the respondent failed to call the other two prosecutors with whom Mr. Bottoms consulted during the trial in an effort to overcome the absence of documentation and Mr. Bottoms' failure to recall.

> n.10 The Court finds it passing strange that Mr. Bottoms' notes concerning Ms. Alderson were not turned over to the attorney general's office along with the rest of his documentation of this trial.

Finally, Mr. Bottoms' testimony that he knew he had a good reason for striking Ms. Alderson or he would not have done so because he does not challenge jurors for race is clearly insufficient. As noted by the Supreme Court, a prosecutor may not rebut the defendant's case "merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.'" Batson, 476 U.S. at 98, 106 S.Ct. at 1723-24, 90 L.Ed.2d at 88 (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 543 (1972)).

(Docket Entry No. 85, Memorandum at pp. 6-9).

For the above-stated reasons, the Court concludes that the Petitioner is entitled to relief from this Court's prior final judgment in this action (Docket Entry No. 144) and to the writ of habeas corpus.

An appropriate Order is filed herewith.

16

**ENTERED** this the 20th day of April, 2006.

_____
WILLIAM J. HAYNES, JR
United States District Judge