**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOE CLARK MITCHELL** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 1:93-cv-00073** |
| **v.** | ) | **Judge Campbell / Judge Frensley** |
| | ) | |
| **JOHN REES,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Joe Clark Mitchell, an African American, was convicted by an all-white jury in Maury County, Tennessee in 1988 and sentenced to life plus thirteen years in the state penitentiary. Mr. Mitchell filed his petition for habeas corpus relief in federal court in 1993. Following an evidentiary hearing, the court granted the Petition in 1995 on the grounds the record established a violation of *Batson v. Kentucky*. Docket Nos. 85–86. Specifically, the court found Mitchell had established a prima facie case of race discrimination in the State's decision to strike African American juror Ms. Hattie Alderson. Though the state proffered a race neutral explanation, that explanation was "not worthy of belief." Docket No. 85, p. 6–9. Since then, Petitioner's case has reached the Sixth Circuit five times. Although this court and the Sixth Circuit have conflicted on whether to grant habeas relief, in the more than twenty years since, no federal court has disputed the finding that Petitioner's conviction was racially-tainted.

Now, pending before the court is Petitioner's Motion to Reopen Habeas Proceedings under FED. R. CIV. P. 60(b) and Memorandum in Support of Granting Habeas Corpus Relief on Ineffective Assistance of Counsel Claim. Docket No. 217. Chief Judge Haynes (1) granted the

Motion and (2) ordered Respondent to respond to the merits of Petitioner's *Martinez* claims. Docket No. 218. Respondent filed a Response to Petitioner's Motion to Reopen Habeas Proceedings under FED. R. CIV. P. 60(b). Docket No. 223. Petitioner filed a Reply to Respondent's *Martinez* Response. Docket No. 224. The petition was referred to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b), FED. R. CIV. P., and the Local Rules of Court. The undersigned heard oral arguments from both sides on the merits of Petitioner's *Martinez* claims on July 13, 2018. Docket No. 240. The Motion is now ripe for review.

 For the reasons set forth below, the undersigned recommends that habeas corpus relief be GRANTED on the ground that Petitioner was denied the effective assistance of counsel.

## I.  Background

This case has an extensive procedural history. In 1986, Joe Clark Mitchell was charged with offenses in Giles County, Tennessee. *Mitchell v. State*, No. M201400754CCAR3CD, 2015 WL 2400239, at *1 (Tenn. Crim. App. May 20, 2015). After a change of venue was granted, he was tried in Maury County, Tennessee, and an all-white jury convicted him of two counts of aggravated assault, two counts of armed robbery, two counts of aggravated kidnapping, one count of arson, one count of first-degree burglary, and two counts of aggravated rape. *State v. Joe Clark Mitchell,* No. 87–152–III, 1988 WL 32362, at *1 (Tenn. Crim. App. at Nashville, Apr. 7, 1988). On direct appeal, The Tennessee Court of Criminal Appeals modified one of the aggravated rape convictions to rape. *Id.* Ultimately, the Petitioner received an effective sentence of life plus thirteen years. *Mitchell v. Johnson*, No. M201701478CCAR3HC, 2018 WL 3239272, at *1 (Tenn. Crim. App. July 3, 2018), appeal denied (Oct. 10, 2018).

In his state post-conviction motion, Petitioner claimed, *inter alia*, that counsel failed to

challenge the make-up of the jury pool. Following his motion,

> the trial court held an evidentiary hearing and, despite Mitchell not having raised a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), at trial, on direct appeal, or in his post-conviction motion nor having raised a claim that trial and\ appellate counsel were ineffective for failing to raise a *Batson* claim, the court permitted Mitchell to introduce evidence on the *Batson* claim. Without specifically addressing the *Batson* issue, the court ruled that the petition should be dismissed, holding that none of Mitchell's claims had merit. In affirming the trial court's denial of the post-conviction motion, the Tennessee Court of Criminal Appeals expressly addressed the *Batson* issue stating "the lack of evidence on the *Batson* issue does not justify this Court upsetting the judgment entered in the original cases." *Mitchell v. State*, No. 01-C- 019007CC00158, 1991 WL 1351, at *1 (Tenn. Crim. App. Jan. 11, 1991).

Docket No. 216, p. 1–2.

After exhausting his state court remedies, Petitioner filed his § 2254 petition in federal court in 1993. This court dismissed two claims that alleged Petitioner "had ineffective assistance of counsel *vis-vis Batson* and other issues, and that there was insufficient evidence to convict him. The sole claim that [this] court did not dismiss was the *Batson* claim itself (not the related ineffective-assistance claim) as stated in the federal habeas petition." *Mitchell v. Rees*, 114 F.3d 571, 575 (6th Cir. 1997) ("*Mitchell I*"). This court referred Petitioner's *Batson* claim to a magistrate judge for an evidentiary hearing to determine the merits of the claim. Docket Nos. 14, 64.

At the evidentiary hearing, the District Attorney, Mike Bottoms testified that he struck Hattie Alderson, an African-American juror from the panel of prospective jurors, because she "appeared to be an elderly lady," who would not be able to follow the evidence in the case; he "probably" struck her because she was elderly. Docket No. 67, p. 14, 22, 24–25. Mr. Bottoms thought, "there was something about [Alderson's] appearance that bothered me." Docket No. 67, p. 35–36. Mr. Bottoms, however, did not ask Ms. Alderson any specific questions nor did he strike white jurors who were older than Ms. Alderson. Docket No. 67, p. 38, 46. These older white men included Robert Hardison (eleven years older) and William Brown (six years older). Docket No.

67, p. 38, 46. In addition, jurors Ms. John Petty and Sarah Graff, were also older than Ms. Alderson. Docket No. 67, p. 40–41. Mr. Bottoms insisted that "I know I had a good reason" for striking Ms. Alderson. Docket No. 67, p. 52.

Based on the findings from the evidentiary hearing, then Magistrate Judge Haynes recommended that the petition be denied: although Petitioner made a prima facie showing of a *Batson* violation, Petitioner nonetheless "presented a neutral explanation for the prosecutor's striking of one black juror from the jury panel." Docket No., 64, p. 2. Upon consideration of Petitioner's objections to the magistrate judge's report and recommendation, Judge Higgins made a de novo determination that the record established a *Batson* violation and granted the petition. Docket Entry Nos. 85–86. Judge Higgins, concluded (1) that Petitioner demonstrated a prima facie case of race discrimination; (2) that the State proffered a race-neutral explanation for striking Ms. Alderson; but (3) that Bottoms' explanation that Alderson was struck because of her age was "not worthy of belief." Docket Entry No. 85, p. 6–9.

Since the grant of habeas relief, Respondent has contested the decision to conduct an evidentiary hearing, and Petitioner's case has reached the Sixth Circuit five times. The Sixth Circuit, in its most recent opinion on the case (Docket No. 216 ("*Mitchell V*")), summarizes the federal court proceedings below:

[*Mitchell I*]

In 1993, Mitchell filed a § 2254 petition in federal court. The district court referred Mitchell's *Batson* claim to a magistrate judge for an evidentiary hearing and ultimately granted habeas relief to Mitchell on that claim. The court denied Mitchell's claims that counsel was ineffective, including his claim that trial and appellate counsel failed to raise the *Batson* issue, and that there was insufficient evidence to support his convictions. The state appealed, and Mitchell cross-appealed the district court's ruling on his claims of ineffective assistance and insufficient evidence. [The Sixth Circuit] held that the district court erred in granting the petition because it was based on evidence adduced at a hearing that was erroneously ordered by the district court. *Mitchell I*, 114 F.3d at 579. In so holding, [the Sixth Circuit] explained that the district court erroneously ordered the hearing without

requiring Mitchell to establish either (a) cause and prejudice for failure to develop the facts underlying his claim in the state court proceedings or (b) that not holding the hearing would result in a fundamental miscarriage of justice. *Id*. at 577–79 (citing *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11–12 (1992)). [The Sixth Circuit] further held that the district court did not err in denying relief on Mitchell's remaining claims, except his claim that counsel was ineffective for failing to raise the *Batson* issue. *Id*. at 579 n.13. [The Sixth Circuit] explained that if Mitchell could establish on remand that he was entitled to a hearing under the *Keeney* standard and that his *Batson* claim had merit, he might be able to prevail on the related ineffective-assistance claim. *Id*.

[*Mitchell II*]

On remand, Mitchell argued that his trial counsel's failure to raise the *Batson* issue excused his failure in the state post-conviction proceedings to put on evidence that a *Batson* violation had occurred. *See Mitchell v. Rees*, 36 F. App'x 752, 753 (6th Cir. 2002) ("*Mitchell II*"). The district court found that the record established that trial counsel was ineffective for failing to raise the *Batson* issue and that such ineffectiveness served as cause for failure to develop the record on post-conviction. The court then concluded that the evidence adduced at the earlier federal court evidentiary hearing proved that a *Batson* violation had occurred. Accordingly, the court granted habeas relief to Mitchell. On appeal, based on the holding in *Mitchell I*, [the Sixth Circuit] again reversed the district court's judgment, explaining as follows:

> The district court's conclusion that the state court record demonstrates ineffective assistance of counsel with regard to the *Batson* issue necessarily depends on the record's demonstrating the existence of a meritorious *Batson* claim. The state appellate court that reviewed the dismissal of Mitchell's post-conviction petition found that "the lack of evidence on the *Batson* issue does not justify this Court in upsetting the judgment entered in the original cases," and in *Mitchell I*, we held that to be a finding of fact that was "fairly supported" by the state court record. *Id*. at 578–79. The district court was not free to overrule our conclusion.

*Id*. at 753–54 (footnote omitted).

[*Mitchell III*]

Subsequently, Mitchell filed a motion in the district court, pursuant to Federal Rule of Civil Procedure 60(b)(6), asserting that *Mitchell I* erroneously denied him a hearing. *Mitchell v. Rees*, 261 F. App'x 825, 828 (6th Cir. 2008) ("*Mitchell III*"). The district court granted the motion, holding that our decision was in error based on our subsequent decision in *Abdur'Rahman v. Bell*, 226 F.3d 696 (6th Cir. 2000), granted an evidentiary hearing, adopted the findings from the previous evidentiary hearing, and granted the petition because of the *Batson* violation. *Mitchell III*, 261 F. App'x at 828. On appeal, [the Sixth Circuit] reversed the district court's judgment, on the ground that Mitchell's Rule 60(b) motion was a Rule 60(b)(1) motion rather than a Rule 60(b)(6) motion and was, therefore,

untimely because it was not brought within the one-year jurisdictional time limit. *Id*. at 830.

[*Mitchell IV*]

In another attempt to obtain relief from his conviction, Mitchell moved for permission to amend his prior motion for equitable relief in the form of an "independent action in equity" under Federal Rule of Civil Procedure 60(d)(1). *See Mitchell v. Rees*, 651 F.3d 593, 594 (6th Cir. 2011) ("*Mitchell VI*"). The district court reluctantly denied the motion based on our ruling in *Mitchell II*. *Id*. On appeal, [the Sixth Circuit] affirmed the district court's judgment. *Id*. at 599.

[*Mitchell V*]

In July 2012, Mitchell filed a motion for relief from the judgment, pursuant to Rule 60(b)(6). In May 2013, Mitchell filed a renewed motion for relief from judgment, asking the court to "reopen proceedings on [his] ineffective-assistance-of-counsel claim" in light of the Supreme Court's decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). According to Mitchell, under the Supreme Court's rulings in these cases, his post-conviction counsel's failure to raise a claim that trial counsel was ineffective for failing to raise the *Batson* issue provides cause for any default of his claim that trial counsel was ineffective. The district court granted an evidentiary hearing on the motion and ultimately determined that the motion constituted a second or successive habeas petition. Accordingly, the court transferred the motion to [the Sixth Circuit]. . . .

In the form motion for leave to file a second or successive petition, Mitchell assert[ed] that his Rule 60(b) motion was improperly transferred and ask[ed the Sixth Circuit] to remand the matter to the district court for consideration of his motion on the merits. He has also filed a motion to remand. . . .

[The Sixth Circuit] conclude[d] that, under *Gonzalez v. Crosby*, Mitchell's argument that *Martinez v. Ryan* and *Trevino v. Thaler* demonstrate "cause" to excuse procedural default of his *Batson* claim does not assert a "claim" and therefore should not be interpreted as a second or successive habeas petition. Accordingly, [the Sixth Circuit] grant[ed] Mitchell's motion to remand.

Docket No. 216, p. 1–4, 6.

After the Sixth Circuit held that the petition was not a second or successive habeas petition, Chief Judge Haynes granted Petitioner's motion to reopen habeas proceedings under Rule 60(b)(6). Docket No. 218. This court then ordered Respondents to respond to the merits of

Petitioner's *Martinez* claims. Docket No. 218. This Report and Recommendation now considers the merits of the *Martinez* claims to determine whether to grant habeas corpus relief.

## II. Law and Analysis

**A.    Federal Rule of Civil Procedure 60(b): Relief from a Judgment or Order**

### 1.    Generally

As a preliminary matter, 28 U.S.C. § 2254 governs federal habeas relief for prisoners convicted in state court. Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment and request reopening of the case under a limited set of circumstances. *See Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005). The Supreme Court has held that Rule 60(b) has "an unquestionably valid role to play in habeas cases." *Id.* at 534 ("The Rule is often used to relieve parties from the effect of a default judgment mistakenly entered against them . . . a function as legitimate in habeas cases as in run-of-the-mine civil cases. The Rule also preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction . . . ."). Nonetheless, an application for a writ of habeas corpus pursuant to the judgment of a State court must "not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim:" (1) resulted in a decision contrary to Federal law or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Rule 60(b) is designed "to cure procedural violations in an earlier proceeding—here, a habeas corpus proceeding—that raise questions about that proceeding's integrity." *Abdur'Rahman*, 537 U.S. at 95–96. Rule 60(b)(6) permits reopening when the movant shows "any . . . reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rule 60(b)(1)– (5). *Gonzalez*, 545 U.S. at 529. The catchall provision of Rule 60(b)(6)

7

vests wide discretion in courts, but relief is only available in "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777 (2017). In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. *See id.* at 778. Factors for consideration include, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Id.*, citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).

Most recently, and of particular relevance, the United States Supreme Court found that "the introduction of any mention of race," *inter alia*, may constitute extraordinary circumstances to warrant Rule 60(b)(6) relief. *Id.* at 777. In *Buck v. Davis*, the petitioner sought relief on a claim of trial counsel's ineffectiveness in allowing racially biased testimony against the petitioner. *Id.* ("But when a jury hears expert testimony that expressly makes a defendant's race directly pertinent on the question of life or death, the impact of that evidence cannot be measured simply by how much air time it received at trial or how many pages it occupies in the record. Some toxins can be deadly in small doses."). The Supreme Court held:

> Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. Relying on race to impose a criminal sanction "poisons public confidence" in the judicial process. It thus injures not just the defendant, but "the law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the processes of our courts." Such concerns are precisely among those we have identified as supporting relief under Rule 60(b)(6).

*Id.* at 778 (internal quotation marks and citations omitted).

## 2. Procedurally Defaulted Ineffective Assistance of Counsel Claims

A habeas petitioner is eligible for relief under § 2254 only if he first exhausts his state-court remedies. *See* 28 U.S.C. § 2254(b); *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). The exhaustion requirement demands the petitioner fairly present his federal claim to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *West*, 790 F.3d at 697. If the petitioner

fails to raise a claim on appeal, in violation of a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default." *West*, 790 F.3d at 697.

In *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." An ineffectiveness claim is insubstantial, and thus insufficient to invoke *Martinez*, if "it does not have any merit or . . . it is wholly without factual support, or . . . the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 15–16.

In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Supreme Court expanded the *Martinez* exception to situations where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." The Sixth Circuit has held that the *Martinez–Trevino* exception applies in Tennessee cases. *Sutton v. Carpenter*, 745 F.3d 787, 795 (6th Cir. 2014).

> The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:
>
> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (internal citations omitted).

Whether post-conviction counsel was ineffective is necessarily connected to the strength of the underlying claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429, at *2 (M.D. Tenn. Jan 8, 2018), *quoting Thorne v. Holloway*, No. 3:14-cv-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 Fed. Appx. 541 (6th Cir. 2016).

If the underlying claim is not sufficiently substantial, "because the 'cause and prejudice' standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel." *Thorne v. Holloway*, 2014 WL 4411680, at *23. And if the ineffective assistance of trial counsel claim cannot satisfy actual prejudice, there "could not be a reasonable probability that the result of post-conviction proceedings would have been different." *Id.*, *quoting Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

To establish ineffective assistance of counsel, a petitioner must demonstrate that under the totality of the circumstances, his or her trial counsel performed deficiently and that counsel's performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984). As the Supreme Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a

defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. To satisfy this prong, counsel must fulfill his or her duty to investigate—"to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. *Strickland* directs that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* As the Supreme Court noted:

. . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id.* at 690–91.

As to the "prejudice" inquiry, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000). In essence, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694.

The benchmark for judging any ineffectiveness claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("[T]he determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'"), *citing United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

**3.      *Batson* Claim**

The Equal Protection Clause prohibits a prosecutor from using peremptory challenges to remove an otherwise qualified prospective juror from the petit jury solely on the basis of race. *Batson*, 476 U.S. at 84. *Batson* provides a three-step inquiry for determining whether a peremptory challenge was based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008) (internal quotation marks omitted), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 328–29 (2003).

To establish a prima facie case, and thus satisfy step one of *Batson*, the party challenging the peremptory strike must demonstrate: "(1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts, along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *United States v. McAllister*, 693 F.3d 572, 579 (6th Cir. 2012). A defendant may also raise a *Batson* violation even if he or she does not belong to the same cognizable racial group as the excluded juror. *Id*. at 579 n.2, *citing Powers v. Ohio*, 499 U.S. 400, 402 (1991).

**B.      Merits Adjudication in State Court Proceedings**

Section 2254(d) limits a federal court's authority to grant writs of habeas corpus on behalf of persons held in state custody. If an application for a writ of habeas corpus includes a claim that has been "adjudicated on the merits in State court proceedings," an additional restriction applies:

> Under § 2254(d), that application shall not be granted with respect to [such a] claim . . . unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

In *Pinholster*, the Supreme Court reviewed the Ninth Circuit's grant of habeas relief to a California Prisoner. *Id.* at 177–80. Pinholster submitted two state habeas petitions alleging, *inter alia*, ineffective assistance of counsel, which the "California Supreme Court . . . unanimously and summarily denied . . . on the ground that [they were both] without merit." *Id.* at 178. After Pinholster sought habeas relief in federal court, the district court held an evidentiary hearing and granted habeas relief "for inadequacy of counsel by failure to investigate and present mitigation evidence at the penalty hearing." *Id.* (internal quotation marks omitted). The Ninth Circuit affirmed

en banc, holding that (1) the hearing was not barred by 28 U.S.C. §2254(e)(2); (2) the new evidence adduced at the hearing could be considered in performing analysis under § 2254(d)(1); and (3) the California Supreme Court unreasonably applied *Strickland* in denying Pinholster's claim of penalty-phase ineffective assistance of counsel. *Id.* at 180.

The Supreme Court reversed, after conducting "a thorough review of the state-court record," holding that "review under § 2254(d)(1) is limited to the record that was before the state court that *adjudicated the claim on the merits*." *Id.* at 181, 188. (emphasis added). This highly deferential standard demands that "state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (per curiam). The Court explained that § 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made. It follows the record under review is limited to the record in existence at that same time i.e., the record before the state court." *Id.* at 182. In *Pinholster*, the state-court record "support[ed] the idea that Pinholster's counsel acted strategically," which ultimately supported the state court's merits determination.[1] *Id.* at 191. In fact, "[n]o party disputes that Pinholster's federal petition alleges an ineffective-assistance-of-counsel claim that had been included in both of Pinholster's state habeas petitions." *Id.* at 187.

Nonetheless, § 2254(d) does not impose "a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's

---

[1] The state-court record "supports the idea that Pinholster's counsel acted strategically to get the prosecution's aggravation witness excluded for lack of notice, and if that failed, to put on Pinholster's mother." *Id. at* 191. The state-court record included timesheets that indicated that Pinholster's trial counsel investigated mitigating evidence, and "[t]he record also shows that Pinholster's counsel confronted a challenging penalty phase with an unsympathetic client, which limited their feasible mitigation strategies." *Id.* at 192–93.

precedents[] . . . [and] guard[s] against extreme malfunctions in the state criminal justice systems." *Id.* To obtain habeas corpus relief from a federal court, a state prisoner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. As Justice Breyer noted in his concurring and dissenting opinion in *Pinholster*, "§ 2254(d)(1) does not leave AEDPA's hearing section, § 2254(e), without work to do." *Id.* at 206 (Breyer, J., concurring in part and dissenting in part). Moreover,

> [a]n offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.

*Id.*

Accordingly, a habeas petitioner is not necessarily precluded from expanding the state record. *See Gallow v. Cooper*, 570 U.S. 933, 933 (2013). This is particularly relevant in ineffective assistance claims where the claim was not properly presented in state court. In Justice Breyer's statement "respecting the denial of the petition for the writ of certiorari" in *Gallow*, he explained "a claim without any evidence to support it might as well be no claim at all." As a result, in such circumstances, "where state habeas counsel deficiently neglects to bring forward 'any admissible evidence' to support a substantial claim of ineffective assistance of trial counsel, there seems to me to be a strong argument that the state habeas counsel's ineffective assistance results in a procedural default of that claim." *Id.* (explaining that the denial of certiorari here was not a reflection of the merits of Gallow's claims).

The Sixth Circuit echoes Justice Breyer's statement in *McClellan v. Rapelje*, 703 F.3d 344 (6th Cir. 2013). *In McClellan*, the Sixth Circuit found that *Pinholster* did "not prohibit the consideration of evidence on the merits in a later federal evidentiary hearing" when "[t]here were

no relevant factual findings in the Michigan courts on the issue before" the Sixth Circuit. *Id.* at 351. Even though the Michigan Court of Appeals denied the petitioner's ineffectiveness claim "for lack of merit on the grounds presented," the Sixth Circuit ultimately determined that the state court "did not reach the merits of the Sixth Amendment ineffectiveness claim." *Id.*

Additionally, several circuits have found that *Pinholster* does not bar federal evidentiary hearings when the state court violates clearly established federal law based solely on the state court record. *See, e.g.*, *Smith v. Cain*, 708 F.3d 628, 638 (5th Cir. 2013) (finding evidentiary hearing not barred by *Pinholster* because state court misapplied *Batson*); *Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) ("*Martinez* would be a dead letter if a prisoner's only opportunity to develop the factual record of his state PCR counsel's ineffectiveness had been in state PCR proceedings, where the same ineffective counsel represented him."); *Gordon v. Braxton*, 780 F.3d 196, 204 (4th Cir. 2015) ("Section 2254(d)(1) does not apply to Gordon's claim because the state court did not adjudicate it on the merits. *Pinholster* did not substantively engage with the adjudication-on-the-merits requirement . . . Therefore, Pinholster does not foreclose an evidentiary hearing.").

### III. The Case at Bar

A.      **Arguments set forth by both parties**

As a preliminary matter, the Sixth Circuit in *Mitchell V* held that Petitioner's motion is not a second petition;[2] therefore, this Court must decide the Rule 60(b)(6) motion on the merits. Docket No. 216, p. 6 (Sixth Circuit Order).

---

[2] As the Sixth Circuit explains, in *Mitchell V*, "[28] U.S.C. § 2244(b) imposes requirements on second or successive habeas petitions. As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner's application for a writ of habeas corpus." Docket No. 216, p. 5. The Supreme Court in *Gonzalez* explained that an "application for habeas relief is a filing that contains one or more claims." *Gonzalez*, 545 U.S. at 530. A motion presents a "claim" when the motion "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim *on the merits*." *Id.* at 532. Under § 2244(b)(1), "A claim presented in a second or successive habeas corpus application under [§] 2254 that was presented in a prior application shall be dismissed." *Mitchell V* ultimately held "that, under *Gonzalez v. Crosby*, Mitchell's argument that *Martinez v. Ryan* and *Trevino v. Thaler* demonstrate

16

Petitioner seeks Rule 60(b)(6) relief to reopen habeas proceedings on his claim that "trial counsel ineffectively failed to make a meritorious challenge to the prosecutor's unconstitutional race-based exclusion of African-American juror Hattie Alderson . . . ." Docket No. 227, p. 1. Petitioner cites ten equitable factors that mandate the reopening of habeas proceedings under Rule 60(b)(6), which can be summarized as follows: (1) unconstitutional racial discrimination in the judicial process; (2) a meritorious *Batson*-Ineffective Assistance of Counsel claim; and (3) intervening law under *Martinez* that supports Petitioner's claim. Docket No. 217, p. 3–5. "Given the injustice perpetrated by invidious race discrimination," Petitioner contends that "relief from judgment is necessary to avoid the risk of undermining the public's confidence in the judicial process." Docket No. 217, p. 6 (internal quotation marks and citation omitted).

Respondent argues that *Martinez* provides Petitioner no relief because Petitioner's *Batson* and Ineffective Assistance of Counsel claims were dismissed on the merits rather than due to procedural default. Docket No. 223, p. 5. Respondent relies on the Sixth Circuit's opinions refusing to disturb the state court's *Batson* determination. *Mitchell v. Rees ("Mitchell II")*, 36 F. App'x 752, 753, n.3 (6th Cir. 2002) ("[I]t is clear from the record . . . that Mitchell did not raise in his state court post-conviction petition either a *Batson* claim or a claim of ineffective assistance related to *Batson*. . . . [H]owever, he was permitted . . . to present evidence with regard to the *Batson* claim. The state court found no merit to any of his claims and dismissed the petition."); *Mitchell I*, 114 F.3d at 576–77 ("[T]he state appellate court reviewed the evidence presented in the course of the hearing on the post-conviction petition . . . and held that the lack of evidence on the Batson issue does not justify this Court in upsetting the judgment entered in the original cases."); Docket No. 223, p. 5–6. Respondent also cites *Cullen v. Pinholster*, 563 U.S. 170 (2011) to support

'cause' to excuse procedural default of his *Batson* claim does not assert a 'claim' and therefore should not be interpreted as a second or successive habeas petition." Docket No. 216, p. 6.

their argument: "*Pinholster* plainly bans such an attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court. *Martinez* does not alter that conclusion." Docket No. 223, p. 7. Further, Respondent contends that *Martinez* is not a proper basis for relief under Rule 60(b)(6) because a change in decisional law is not sufficient cause for a Rule 60(b)(6) motion to be granted. Docket No. 223, p. 8.

In response, Petitioner argues that the *Batson*-Ineffective Assistance of Counsel claim was not decided on the merits and that *Martinez* establishes "the very 'cause' that the Sixth Circuit previously said was lacking." Docket No. 224, p. 1; *see Mitchell II*, 36 F. App'x at 753 ("The threshold issue before the district court on remand was whether Mitchell had shown cause and prejudice regarding his failure to raise and support his Batson claim in the state court post-conviction proceeding."). Petitioner puts forth two reasons that the state court did not decide the claim on the merits: (1) the claim was never raised in the post-conviction proceedings and (2) post-conviction counsel never presented to the post-conviction trial court any proof concerning Ms. Alderson's exclusion or the related ineffectiveness of trial counsel in failing to object. Docket No. 224, p. 2. Accordingly, since Petitioner's claim was not adjudicated on the merits and defaulted in the post-conviction trial court, petitioner contends that *Martinez* applies. Docket No. 224, p. 2.

## B.    Analysis

### 1.    Establishing cause under *Martinez*

This Court has granted habeas relief to Petitioner three times, and no other federal court has disputed that Petitioner's conviction was racially-tainted. Following *Mitchell V*, Judge Haynes granted Petitioner's motion to reopen habeas proceedings. Docket No. 218. Accordingly, and, in line with Sixth Circuit precedent, "[t]he unique facts of this case compel the granting of the [Rule

60(b)(6)] motion," and this Court should address Petitioner's *Batson* claim on the merits. *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985).

Petitioner's post-conviction counsel made two critical errors that fit within *Martinez*, establishing the necessary *cause* for Petitioner's failure to raise and support his *Batson* claim in the state court post-conviction proceeding. *See Williams v. Taylor*, 529 U.S. 420, 420–21 (2000) ("Under § 2254(e)(2) . . . a fail[ure] to develop a claim's factual basis in state-court proceedings is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or his counsel. The statute does not bar the evidentiary hearing petitioner seeks on his juror bias and prosecutorial misconduct claims . . . ." (internal quotation marks omitted)). In violation of *Strickland*, post-conviction counsel did not (1) raise the *Batson*-Ineffective Assistance of Counsel claim presented in federal court nor (2) present evidence to support the claim now before this Court. Docket No. 224, p. 3.

As expressed in Justice Breyer's statement "respecting the denial of the petition for the writ of certiorari" in *Gallow v. Cooper*, 570 U.S. 933 (2013), "a claim without any evidence to support it might as well be no claim at all." In *Gallow*, petitioner's trial counsel admitted in an affidavit and testimony before the State's Disciplinary Board that

> he was unable to effectively cross-examine the victim because he was suffering from panic attacks and, more importantly, is related to the victim. Because of this, [he] advised Gallow to plead guilty despite Gallow's reluctance to do so, and failed to inform both Gallow and the State that he had evidence to impeach the victim's testimony. In reliance on this conflicted advice, Gallow pleaded guilty midway through trial. His trial counsel was subsequently disbarred. When Gallow, represented by a different attorney, filed for state postconviction relief, his new attorney failed to bring forward any admissible evidence to support his claim of ineffective assistance of trial counsel. Namely, in state court Gallow's habeas counsel repeatedly neglected to subpoena the trial counsel, which led the state court to reject the counsel's affidavit on state evidentiary grounds. This meant that Gallow was left with a claim that had virtually no evidentiary support.

*Id.* (internal citations and quotation marks omitted).

Here, Petitioner failed to obtain a hearing on the merits of his ineffective assistance of trial counsel claim because state habeas counsel neglected to "properly presen[t]" the petitioner's ineffective assistance claim in state court. *Martinez*, 566 U.S. at 5. Accordingly, Respondent's reliance on *Pinholster*–banning an attempt to obtain review of the merits of claims presented in state court considering facts that were not presented in state court–is weakened because Petitioner is not necessarily precluded from expanding the record. *Id.*

Moreover, *Pinholster* (and the development of the state post-conviction record in that case) is distinguishable from the case at bar. In *Pinholster*, the petitioner sought habeas relief alleging, *inter alia*, that trial counsel failed to adequately investigate and present mitigating evidence during the penalty phase. The state record, however, "support[ed] the idea that Pinholster's counsel acted strategically to get the prosecution's aggravation witnesses excluded for lack of notice, and if that failed, to put on Pinholster's mother." 563 U.S. at 190 ("In sum, Brainard and Dettmar made statements suggesting that they were not surprised that the State intended to put on aggravating evidence, billing records show that they spent time investigating mitigating evidence, and the record demonstrates that they represented a psychotic client whose performance at trial hardly endeared him to the jury."). Additionally, they held evidentiary hearings where proof on the very issue was developed.[3] *Id.* at 188.

The procedural posture of this case is very different than that of *Pinholster*. Unlike *Pinholster*, the *Batson*-Ineffective Assistance of Counsel claim was not pled or developed in the post-conviction proceedings. In fact, the state post-conviction transcript refers to *Batson v.*

_____

[3] As the *Pinholster* majority explains: "The specific contents of the state-court record depend on which of the two state habeas proceedings is at issue. . . . [T]he most favorable approach for Pinholster would be review of only the second state habeas proceeding, the record of which includes all of the evidence that Pinholster ever submitted in state habeas. . . . Even taking the approach most favorable to Pinholster, and reviewing only whether the California Supreme Court was objectively unreasonable in the second state habeas proceeding, we find that Pinholster has failed to satisfy § 2254(d)(1)." 563 U.S. at 188 n.12 (internal citations omitted).

*Kentucky* only once. Rep. Tr. on Appeal for Indigent Def. Post-Conviction Relief Hr'g 6:25, Jun. 1, 1990. Although Petitioner's trial attorney, Mr. William S. Fleming, was questioned about challenging any juror strikes–"Once you saw that the first black person was struck and then saw maybe a second black person that was struck - - did you think of challenging the State to determine whether or not they were establishing a pattern of striking persons strictly on the basis of race" (*Id.* at 113:15–20)–there was no mention of Ms. Alderson (the struck African-American juror) or any other members of the jury, including (as described above) Mr. Hardison, Mr. Brown, Ms. Petty, and Ms. Graff.[4] Unlike the record in *Pinholster*, here, the state-post conviction record was not developed to support a merits determination. In fact, as the record reflects, Petitioner's state post-conviction hearing primarily focused on whether "petitioner was denied his constitutional right to testify . . . the most serious allegation that's been made." *Id.* at 78:19–21.

The *Pinholster* petitioner's claim was already adjudicated on the merits in state court proceedings. *Id.* at 187 ("No party disputes that Pinholster's federal petition alleges an ineffective-assistance-of-counsel claim that had been included in both of Pinholster's state habeas petitions."). Here, Petitioner failed to obtain a hearing on the merits. Given that the *Batson* claim was not pled and no evidentiary record was developed by post-conviction counsel to support such a claim, it is perhaps not surprising that the state appellate court found not that the evidence supported the conclusion that there was no *Batson* violation, but rather "the lack of evidence on the *Batson* issue" did not justify relief. *Mitchell v. State*, No. 01-C- 019007CC00158, 1991 WL 1351, at *1 (Tenn. Crim. App. Jan. 11, 1991). Like the Sixth Circuit's finding in *McClellan*, here, the lack of evidence

---

[4] Petitioner's attorney asked Mr. Fleming questions about the general jury venire rather than about specific members. For example, "Q: And were any blacks on the jury? A. You know, I've been trying to recall, and I honestly don't remember. . . . Q: Do you recall about how many [black members] may have been available to sit on the jury that were struck? A. I couldn't give you a number." Rep. Tr. on Appeal for Indigent Def. Post-Conviction Relief Hr'g 111–12:20–6.

necessarily precludes a merits determination. *See* 703 F.3d at 351. The Petitioner should not be excluded from expanding the record on his ineffective assistance claim because it was not properly presented in state court.

As an additional matter, in finding *cause*, it is appropriate to consider the risk of injustice to (1) the parties in the particular case, (2) the risk that the denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). This Court must continuously bear in mind that "to perform its high function in the best way 'justice must satisfy the appearance of justice." *Id.* (*citing In re Murchison,* 349 U.S. 133 (1955)). When considering fairness, there is a greater risk of unfairness when refusing to consider Petitioner's *Batson* claims. As previously stated, this Court has granted habeas relief to Petitioner three times, and no other federal court has disputed that Petitioner's conviction was racially-tainted.

In light of *Buck*, and given the ineffective assistance of counsel, Petitioner's ten enumerated factors, and racial discrimination tainting this case, Petitioner has satisfied the extraordinary circumstances necessary to reopen the habeas proceeding under Rule 60(b)(6) and has established cause under *Martinez*.

### 2.      The merits of Petitioner's *Batson*-Ineffective Assistance of Counsel claim

Finding that Petitioner has established cause under *Martinez*, this Court should address Petitioner's *Batson*-Ineffective Assistance of Counsel claim on the merits. Petitioner has sought relief for decades from a racially-tainted judgment and is entitled to have his claim heard on the merits. This Court initially found that Petitioner established a prima facie case "of the respondent's purposeful discrimination in striking" Ms. Alderson, an African-American. Docket No. 85, p. 9.

In a subsequent Report and Recommendation after return on appeal, Magistrate Judge Haynes noted that trial counsel's performance was deficient because trial counsel:

> was clearly aware of a *Batson* violation by the prosecutor . . . Petitioner was prejudiced by his trial counsel's omission in that he deprived a petitioner of a just result on direct appeal and denied a juror who was a member of his peers to have served on his jury. . . . Petitioner's proof satisfies the deficiency and prejudice elements for his ineffective assistance of counsel at trial and direct appeal claim.

Docket No. 130, p. 4, 19. Judge Higgins again agreed that the writ of habeas corpus be granted. R. 134, p. 1.

The undersigned recommends that this Court adopt the factual findings and conclusions of law of Judge Higgins as this Court's ruling on the merits of the Petitioner's *Batson*-Ineffective Assistance of Counsel claim.

> The evidence before the Court indicates that the respondent's explanation for the peremptory challenge of the black jurors, Ms. Alderson, is pretextual and the petitioner has carried his burden of proving purposeful discrimination. During the evidentiary hearing, the prosecutor, Mr. Bottoms, testified that he struck Ms. Alderson because of her elderly appearance, as he believed that she would be unable to follow the evidence in the case. [Docket Entry No. 67, p.] 22. He further testified that the reason he challenged Ms. Alderson was "probably" because she was elderly. [Docket Entry No. 67, p.] 24–25. Because a discriminatory intent is not inherent in this explanation, the respondent's reason is deemed to be racially neutral

> However, the evidence before the Court leads to the conclusion that this racially neutral explanation, however characterized, is not worthy of belief. As an initial matter, it is undisputed that Mr. Bottoms failed to strike white jurors who were older than Ms. Alderson. Although the evidence indicates that Mr. Bottoms was unaware of the jurors' specific ages, the Court notes that a number of the white jurors who were not challenged by Mr. Bottoms were older than Ms. Alderson, one of whom was eleven years older[Docket Entry No. 67, p.] 38–41.

> Furthermore, Mr. Bottoms did not identify any objective criteria upon which to base his conclusion that Ms. Alderson was unable to follow the evidence because of her elderly appearance. Specifically, he did not indicate that she looked particularly frail or infirm in any way which might signify a physical condition which would render her less able to follow the course of the trial. Rather, Mr. Bottoms acknowledged that he could not specify what aspect of Ms. Alderson's appearance led him to conclude that she would be unable to follow the evidence. [Docket Entry No. 67, p.] 35–36. Likewise, he admitted that he could not recall anything about her demeanor. [Docket Entry No. 67, p.] 51.

Mr. Bottoms' questions during voir dire examination support an inference of discriminatory purpose. For example, it is significant that Mr. Bottoms asked Ms. Alderson no questions individually, relying solely upon her responses to questions directed to a group of three jurors which included Ms. Alderson. [Docket Entry No. 67, p.] 32–34. Mr. Bottoms acknowledged that the only question Ms. Alderson answered differently from the other two jurors was with regard to her experience of serving on many juries. [Docket Entry No. 67, p.] 46, 51. Nonetheless, a white juror in this group, Ms. Stephens, who was slightly over one year younger than Ms. Alderson, was not challenged by Mr. Bottoms. [Docket Entry No. 67, p.] 43.

The Court notes that Ms. Alderson's extensive previous jury service might be considered to be a variable which would enhance her ability to understand and follow court proceedings.

Furthermore, Mr. Bottoms failed to ask Ms. Alderson any questions concerning her health, physical condition, mental state or general ability to follow the court proceedings. Although Mr. Bottoms did not know Ms. Alderson's age and claimed to have concerns due to her elderly appearance, he failed to ask her any questions to elicit her age or other information relevant to his concerns. He did not ask any questions to determine whether her age, physical condition or health would have an impact on her ability to serve as a juror.

Moreover, the conclusion that the respondent's proffered neutral explanation is pretextual is further supported by Mr. Bottoms' reliance on general assertions and his failure to recall precisely why he concluded Ms. Alderson would be unable to follow the evidence. It is curious that Mr. Bottoms' trial notes documenting his reasons for striking Ms. Alderson are nowhere to be found, although other parts of the trial file were located. In addition, Mr. Bottoms testified that two other prosecutors tried the case and participated in the voir dire and that all three prosecutors agreed on the peremptory strikes. [Docket Entry No. 67, p.] 21. Despite this fact, the respondent failed to call the other two prosecutors with whom Mr. Bottoms consulted during the trial in an effort to overcome the absence of documentation and Mr. Bottoms' failure to recall.

Finally, Mr. Bottoms' testimony that he knew he had a good reason for striking Ms. Alderson or he would not have done so because he does not challenge jurors for race is clearly insufficient. As noted by the Supreme Court, a prosecutor may not rebut the defendant's case "merely by denying that he had a discriminatory motive or 'affirm[ing][his] good faith in making individual selections.'"

Docket Entry No. 85, Memorandum at p. 6–9 (case internal citations omitted).

For the reasons discussed above, finding cause under *Martinez*, the undersigned recommends that Petitioner be granted habeas corpus relief on the ground that trial counsel was ineffective for failing to object to the race-based exclusion of Ms. Alderson.

# VI. Recommendation

For the reasons discussed above, the undersigned recommends that habeas corpus relief be GRANTED on the ground that Petitioner was denied the effective assistance of counsel.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**