# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 04, 2020

Mr. Michael C. Holley
Federal Public Defender's Office
810 Broadway
Suite 200
Nashville, TN 37203

Mr. Michael Matthew Stahl
Office of the Attorney General
of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207

        Re:  Case No. 19-6070, *Joe Mitchell v. Kevin Genovese*
             Originating Case No. : 1:93-cv-00073

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered
in conformity with Rule 36, Federal Rules of Appellate Procedure.

                        Yours very truly,

                        Deborah S. Hunt, Clerk

                        Cathryn Lovely
                        Deputy Clerk

cc:  Mr. Kirk L. Davies

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0295p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

JOE CLARK MITCHELL,

*Petitioner-Appellant,*

*v.*

KEVIN GENOVESE, Warden,

*Respondent-Appellee.*

No. 19-6070

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 1:93-cv-00073—William Lynn Campbell, Jr., District Judge.

Argued: May 7, 2020

Decided and Filed: September 4, 2020

Before: MERRITT, GUY, and STRANCH, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Michael M. Stahl, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Michael M. Stahl, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

———————

## OPINION

———————

JANE B. STRANCH, Circuit Judge. This is an unusually postured pre-AEDPA habeas case that turns on the Supreme Court's modern procedural default jurisprudence. In 1986, Joe

Clark Mitchell—a black man—was convicted by an all-white jury of raping two white women in Tennessee.  The Warden no longer disputes the assertion that the prosecution's decision to strike a black prospective juror violated *Batson v. Kentucky*, 476 U.S. 79 (1986).  The district court granted relief on *Batson* grounds in 1995, but we reversed, holding that Mitchell had to first establish "cause and prejudice" for failing to develop the claim before the state court.  *Mitchell v. Rees*, 114 F.3d 571, 579 (6th Cir. 1997) ("*Mitchell I*").  We have acknowledged that our holding was error.  *See Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005).  Because Supreme Court precedent now enables Mitchell to show the necessary "cause," and authorizes him to raise his underlying ineffective assistance of counsel (IAC) claim and to seek redress through a Rule 60(b) motion, we **REVERSE** the district court's decision, **GRANT** Mitchell a conditional writ of habeas corpus, and **REMAND** the case for further proceedings.

## I.  BACKGROUND

In 1982, Mitchell was indicted on multiple felony charges relating to the rape and robbery of two women in Giles County, Tennessee.  Mitchell is black; the crime victims white.  The prosecutor later recalled that it was "a highly circumstantial case" against Mitchell.  And because, according to the trial judge, "[t]he feelings in that community were so hot and so bad, so prejudicial," a change of venue motion was granted and the case was tried in Columbia, Tennessee.  The trial took place in 1986, months after the Supreme Court announced its seminal decision in *Batson*, prohibiting race discrimination in jury selection.  476 U.S. 79.

In Mitchell's case, two prospective jurors were black; the rest were white.  One potential black juror was stricken for cause, the other—Hattie Alderson—by the prosecution.  The all-white jury convicted Mitchell of most of the crimes charged—including two counts of aggravated rape.  The Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions save one count of aggravated rape that it reduced to simple rape.  No *Batson* challenge was brought on direct appeal.  Mitchell was left with an effective sentence of life plus thirteen years.

Mitchell sought post-conviction relief in the state trial court.  What occurred there is critical because the relief Mitchell seeks here hinges on whether the state court reached his *Batson* and IAC-*Batson* challenges on the merits, or whether they were barred by a state

procedural rule and thereby procedurally defaulted on federal review.  Mitchell's counsel in state post-conviction proceedings was Daniel Runde, a public defender.  Mitchell's petition for post-conviction relief contained thirteen claims of ineffective assistance of counsel, including a claim that his trial counsel should have challenged the racial composition of the jury pool.  His petition did not include a *Batson* claim, or claim that his trial or direct-appeal attorney was ineffective for not raising a *Batson* challenge.  *See Mitchell I*, 114 F.3d at 573–74.  Nor did Mitchell's petition otherwise challenge the prosecution's use of a peremptory strike against Ms. Alderson or the racial composition of the petit jury.

At the state post-conviction hearing, Runde orally moved to add a *Batson* claim.  The prosecution objected, noting that Runde had enjoyed ample time to amend the petition, and the court moved on without ruling on the issue.  At the evidentiary hearing, Runde asked the defendant and trial counsel to testify to their recollection of the prosecution's strikes against black prospective jurors; but, as the TCCA would note, Runde failed to show how many peremptory strikes were used, who they were used against, or whether black prospective jurors remained in the venire.  *Mitchell v. State*, No. 01-C01-9007-CC-00158, 1991 WL 1351 (Tenn. Crim. App. Jan. 11, 1991) ("*TCCA Opinion*").  The state post-conviction court denied relief.  It ruled orally on each claim enumerated in the petition and did not address *Batson* or Mitchell's attempt to add a *Batson* claim.

Mitchell appealed the denial of state post-conviction relief to the TCCA.  There, he raised a *Batson* claim in his written filings, and, for the first time, a claim that his trial counsel was ineffective for failing to raise a *Batson* challenge below.  *See Mitchell v. Rees*, 36 F. App'x 752, 753 (6th Cir. 2002) ("*Mitchell II*").  The TCCA denied relief.  It reasoned: "[w]e conclude the lack of evidence on the *Batson* issue does not justify this Court upsetting the judgment entered in the original cases."  *TCCA Opinion*, 1991 WL 1351, at *1.  The TCCA did not address Mitchell's IAC-*Batson* claim.  *Id.*

In 1993, Mitchell filed a petition for habeas relief in federal court which included his *Batson* and IAC-*Batson* claims.  The district court directed a magistrate judge to hold an evidentiary hearing on the *Batson* claim, where the prosecutor was questioned about his reason for striking Hattie Alderson.  The prosecutor testified: Alderson "appeared to be an elderly lady,

No. 19-6070                          *Mitchell v. Genovese*                          Page 4

and it was going to take some concentration, because we did not have any confession, we didn't have any eyewitness identification, the offender had worn a ski mask the whole time, and there was just a lot of circumstantial evidence. . . . And I just didn't think she would be able to follow that." On cross-examination, the prosecutor explained: "There was something about her appearance or personality that just didn't fit with me," albeit denying on re-direct that Ms. Alderson was stricken because of her race. The district court granted habeas relief on Mitchell's *Batson* claim, finding the prosecutor's explanation for striking Ms. Alderson "not worthy of belief." It did not address Mitchell's IAC-*Batson* claim.

The state appealed, arguing that the district court erred by holding an evidentiary hearing, and the *Mitchell I* Court agreed. 114 F.3d at 578–79. We held that the court erred by holding an evidentiary hearing without first finding (1) cause and prejudice to overcome Mitchell's failure to develop the factual basis for his *Batson* claim in state court, or (2) that a hearing was necessary to avoid a miscarriage of justice. We remanded to allow Mitchell an opportunity to make the cause-and-prejudice showing needed to overcome procedural default, such that he would be entitled to an evidentiary hearing under *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). But we later acknowledged that under the pre-AEDPA authority that governed Mitchell's habeas petition, our *Mitchell I* holding was wrong: it was within the district court's authority to hold the evidentiary hearing on Mitchell's *Batson* claim without a cause-and-prejudice showing. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 705–06 (6th Cir. 2000); *Harries*, 417 F.3d at 635.

On remand, the district court granted habeas relief again—this time on the merits of Mitchell's IAC-*Batson* claim. It reasoned that Mitchell successfully showed cause and prejudice under *Keeney* to excuse procedural default, which established the propriety of the previously held evidentiary hearing. The district court went on to conclude that Mitchell was entitled to merits relief on both his *Batson* and IAC-*Batson* claims. To excuse procedural default and reach the merits determination that Mitchell's IAC-*Batson* claim warranted habeas relief, however, the Report & Recommendation misguidedly reasoned that trial counsel's performance provided cause to excuse post-conviction counsel's failure to raise Mitchell's *Batson* and IAC-*Batson* claims. We again reversed, reasoning that "[t]he threshold showing Mitchell was required to make in the proceedings on remand was that he had cause for his failure to develop that [*sic*]

state *post-conviction* record." *Mitchell II*, 36 F. App'x at 754. *Mitchell II* instructed the district court to deny habeas relief because Mitchell failed to show cause under *Keeney*. *Id.* at 753–54.

Mitchell's case then entered a procedural thicket. He challenged the holding in *Mitchell I* pursuant to a Rule 60(b)(6) motion, and the district court granted habeas relief for a third time. But, for the third time, we reversed, reasoning that Mitchell's motion should have been construed under Rule 60(b)(1) and thus was untimely. *Mitchell v. Rees*, 261 F. App'x 825, 828–30 (6th Cir. 2008) ("*Mitchell III*") ("*Mitchell I* was erroneous when decided [but] . . . [i]t was an abuse of discretion to grant relief under Rule 60(b)(6)."). And yet, that too was wrong, and we later recognized our error and abrogated *Mitchell III*'s jurisdictional understanding of Rule 60(b)(1)'s time limit. *Penney v. United States*, 870 F.3d 459, 462 (6th Cir. 2017). But not in time to help Mitchell.

Meanwhile, Mitchell challenged his conviction under Rule 60(d). But we held that our "regrettable" error "in *Mitchell I* . . . was no more than an 'ordinary legal error,' fully anticipated by Rule 60(b)(1), and, therefore, not a 'grave miscarriage of justice' that would warrant an independent action under Rule 60(d)." *Mitchell v. Rees*, 651 F.3d 593, 597 (6th Cir. 2011) ("*Mitchell IV*").

In 2012, the Supreme Court decided *Martinez v. Ryan*, holding that when a state limits the consideration of ineffective assistance of trial counsel claims to collateral review, a habeas petitioner may establish cause for procedural default if (1) state post-conviction counsel was ineffective under *Strickland* and (2) the underlying claim has "some merit." 566 U.S. 1, 14 (2012). This rule modified the Supreme Court's previously unqualified holding in *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991), that post-conviction counsel's "ignorance or inadvertence in a postconviction proceeding," including its failure to raise an ineffective assistance of trial counsel claim, does not qualify as cause to excuse procedural default. *Martinez*, 566 U.S. at 9; *see also Buck v. Davis*, 137 S. Ct. 759, 770–71 (2017). In *Trevino v. Thaler*, the Supreme Court extended the *Martinez* exception to the *Coleman* rule to state collateral review systems that, without formally requiring defendants to reserve ineffective assistance of trial counsel claims for collateral review, deny them "a meaningful opportunity" to raise such claims on direct appeal. 569 U.S. 413, 429 (2013).

In the wake of *Martinez* and *Trevino*, Mitchell moved for relief from judgment under Rule 60(b)(6). Construing this motion as a successive habeas petition, the district court transferred the case to the Sixth Circuit. We concluded, however, that the petition was not second or successive because the motion challenged a ruling "which precluded a merits determination;" the motion was properly construed under Rule 60(b)(6). *In re: Mitchell*, No. 13-6614 (6th Cir. Aug. 21, 2014) ("*Mitchell V*").

On remand, the Magistrate Judge recommended that the district court reopen the petition under Rule 60(b)(6), find that *Martinez* applies, and grant habeas relief on the merits of Mitchell's IAC-*Batson* claim. The district court disagreed, reasoning that as a matter of law, Sixth Circuit caselaw precluded Mitchell from using *Martinez* to seek relief. On that basis alone, the district court denied Mitchell's Rule 60(b)(6) motion. But it granted a certificate of appealability.[1] Mitchell now appeals.

## II. ANALYSIS

### A. Standard of Review

The denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014) (citing *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012)). "A district court abuses its discretion when it . . . improperly applies the law." *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004). This court reviews a district court's interpretation of precedent de novo. *Kelly Services, Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 869 (6th Cir. 2017).

### B. Discussion

Mitchell asks this court to reopen habeas proceedings under Rule 60(b)(6) and to grant a writ of habeas corpus—as the district court did in 1995, 1999, and 2006. To prevail, Mitchell must show that (1) he would be entitled to relief under *Martinez* and its Sixth Circuit progeny in light of the pre-AEDPA procedural default rules that govern his case; and (2) the facts and

---

[1]It concluded: "Reasonable jurists would find it debatable whether the petition states a valid ineffective-assistance-of-counsel/*Batson* claim, and reasonable jurists would find it debatable whether the Court is correct in its ruling on the Rule 60(b)/*Martinez* issue."

history of his case present the requisite "extraordinary circumstances" for relief under Rule 60(b)(6).

First, though, the Government makes a threshold argument that can be disposed of quickly. It argues that because "*Martinez* alone does not represent the type of 'extraordinary circumstances' sufficient to grant Rule 60(b)(6) relief," the district court properly denied relief. But while *Martinez* alone does not amount to an exceptional circumstance under Rule 60(b), we have already determined that *Martinez can* unlock relief under Rule 60(b)(6) when coupled with a sufficient equitable justification. *Miller v. Mays*, 879 F.3d 691, 698–700 (6th Cir. 2018); *see also Moore v. Mitchell*, 848 F.3d 774, 776–77 (6th Cir. 2017); *McGuire v. Warden, Chillicothe Correctional Institution*, 738 F.3d 741, 750 (6th Cir. 2013). Indeed, Rule 60(b)(6) is an equitable remedy to be decided as a "'case-by-case inquiry' . . . [that] 'intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Miller*, 879 F.3d at 698 (quoting *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015)). As occurred in *Buck*, *Martinez*—if applicable—would open the door to equitable relief under Rule 60(b)(6). 137 S. Ct. at 779–80. We now turn to the substantive issues in this case.

### 1. The Application of *Martinez* to Mitchell's IAC-*Batson* Claim

To obtain Rule 60(b)(6) relief, Mitchell must show that, as in *Buck*, "*Martinez* and *Trevino,* not *Coleman,* would govern his case were it reopened." *Buck*, 137 S. Ct. at 780. We therefore start by reviewing the application of *Martinez* to Mitchell's claim.

Before doing so, it is useful to list the issues that are not in dispute. The Warden does not challenge Mitchell's contention that the prosecution struck Hattie Alderson in violation of *Batson* and that this constitutional violation would, if challenged directly, entitle Mitchell to a new trial. He does not dispute that the evidence presented at the federal evidentiary hearing in 1994 established a *Batson* violation, or the merits of Mitchell's IAC-*Batson* claim. Nor does the Warden argue that we are bound by *Mitchell I*—a ruling expressly disavowed by binding caselaw. *Abdur'Rahman*, 226 F.3d at 705–06; *Harries*, 417 F.3d at 635. The Warden's only

contention on appeal is that Mitchell simply does not have a viable procedural avenue to challenge *Mitchell I*'s mistake and the *Batson* and IAC-*Batson* violations preceding it.

Considerable agreement also exists concerning Mitchell's *Martinez* challenge. There is no dispute that the *Martinez/Trevino* exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 795 (6th Cir. 2014). And the Warden does not argue that Mitchell's attempt to use the exception here is barred by *Teague v. Lane*, 489 U.S. 288 (1989) or the doctrine governing retroactivity of the Supreme Court's criminal procedure decisions. *See Buck*, 137 S. Ct. at 780. If, as the Magistrate Judge found, *Martinez* applies, its test is fulfilled: (1) state post-conviction counsel was constitutionally ineffective for failing to raise and develop the IAC-*Batson* issue, and (2) the underlying ineffective assistance of trial counsel claim has "some merit." *Martinez*, 566 U.S. at 14. The Warden has waived any argument to the contrary. And, indeed, a district court has already granted relief under *Strickland* on Mitchell's IAC-*Batson* claim. Finally, the parties agree that because Mitchell's habeas petition was filed before Congress passed AEDPA, AEDPA does not govern this case.

The crux of the issue is whether Mitchell's IAC-*Batson* claim was procedurally defaulted. If so, there is no dispute that *Martinez* and the Supreme Court's cause-and-prejudice jurisprudence applies. But the district court held that Mitchell's IAC-*Batson* claim was not procedurally defaulted in state post-conviction proceedings and was instead adjudicated on the merits such that *Martinez* does not apply.

This is a change of course. Twice before, we applied the procedural default doctrine to reverse decisions by the district court to grant habeas relief to Mitchell, ruling that he had failed to show cause for not presenting or sufficiently developing his IAC-*Batson* and *Batson* claims on the merits.

### a. Pre-AEDPA Procedural Default Doctrine

To assess whether Mitchell's present claims were procedurally defaulted, it is necessary to call up the then-operative framework. Before Congress promulgated AEDPA, a state post-conviction court's "determination . . . of a factual issue" was insulated with a "presumption of correctness," unless, among other exceptions, the material facts that were the basis of its

No. 19-6070                          *Mitchell v. Genovese*                          Page 9

determination were "not adequately developed at the State court hearing." 28 U.S.C. § 2254(d)(3) (1993, repealed). In that era, district courts possessed the inherent authority to hold an evidentiary hearing to settle disputes of material fact. *See Harries*, 417 F.3d at 635 ("[D]espite the holding in *Mitchell [I]*, a district court does have the inherent authority to order an evidentiary hearing." (quoting *Abdur'Rahman*, 226 F.3d at 705–06)). But there were also scenarios where pre-AEDPA Supreme Court precedent *required* district courts to hold an evidentiary hearing. *Abdur'Rahman*, 226 F.3d at 705 (citing *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled in part by Keeney*, 504 U.S. 1). Though the district court's prerogative to hold such hearing was "constrained only by his sound discretion," *Townsend* enumerated six situations where a district court was required to hold a hearing, including when "material facts were not adequately developed at the state-court hearing." 372 U.S. at 313, 318. Note the overlap with 28 U.S.C. § 2254(d)(3) (1993, repealed).

In *Keeney*, the Supreme Court overruled *Townsend*'s mandatory hearing directive "holding that the cause and prejudice test applies to a habeas petitioner's failure to develop material facts at the state court level." *Abdur'Rahman*, 226 F.3d at 705 (citing *Keeney*, 504 U.S. at 5). But it noted that the exceptions to the presumption of correctness listed in § 2254(d)— passed after *Townsend*—"indicate[] no assumption that the presence or absence of any of the statutory exceptions will determine whether a hearing is held." *Keeney*, 504 U.S. at 10 n.5. In other words, *Keeney* did not purport to disturb the "viability of *Townsend*'s statement that a district court *may* order an evidentiary hearing" to resolve factual disputes even following § 2254(d). *Abdur'Rahman*, 226 F.3d at 705–06 (emphasis added). The *Abdur'Rahman* Court explained: "Thus, *Mitchell [I]*'s statement that a district court is without authority to order an evidentiary hearing in the absence of one of the exceptions listed in § 2254(d) is overbroad in that it fails to recognize the inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact." *Id*. at 706. *Mitchell I*'s error in 1997 was to mistake *Keeney*'s requirement that a petitioner show cause and prejudice to be entitled to a federal evidentiary hearing as an "express limitation on the district court's jurisdiction," 114 F.3d at 577, and its then-existing discretionary authority to hold an evidentiary hearing absent a cause-and-prejudice showing. *Abdur'Rahman*, 226 F.3d at 705–06; *Harries*, 417 F.3d at 635.

How *Mitchell I* applied a misinterpretation of *Keeney* to Mitchell's case matters to Mitchell's ability to show that his IAC-*Batson* claim is procedurally defaulted. Critically, *Keeney* held that under *Coleman*, a habeas petitioner must show cause and prejudice to challenge state post-conviction counsel's failure to raise or to properly *develop* a claim. *Keeney*, 504 U.S. at 7–8. The Court explained: "[w]e appl[y] the cause-and-prejudice standard uniformly to state procedural defaults . . . it is similarly irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim." *Id.* In *Mitchell I*, we held that while the district court abused its discretion in holding an evidentiary hearing, the "material facts were not adequately developed at the State court hearing," such that the § 2254(d)(3) exception to the presumption-of-correctness applied. *Mitchell I*, 114 F.3d at 577. *Mitchell I* concluded that this constituted a procedural default and reversed the district court's decision granting Mitchell a new trial on the sole basis that he was unable to show cause under *Keeney*.

### b. The Present District Court Opinion

Fast-forward to 2019. The district court opinion currently on appeal rejected the Magistrate Judge's Report and Recommendation (that would have, for a fourth time, granted federal habeas relief) on the sole basis that in the Sixth Circuit, the *Martinez* exception to establish cause does not apply "in cases where a defendant's state post-conviction counsel technically identifies an ineffective-assistance-of-trial-counsel claim in the state post-conviction proceeding, but (ineffectively) fails to present evidence to support that claim." The decision sought to rely on *West*, 790 F.3d at 698–99 and *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013). It acknowledged that our analyses in *West* and *Moore* turned on AEDPA caselaw—and specifically, *Cullen v. Pinholster*, where the Supreme Court held that a habeas petitioner who raised IAC claims in state post-conviction could not rely on new evidence presented in federal court to show that the state court unreasonably adjudicated his constitutional claim on the merits. *See* 563 U.S. 170 (2011). But the decision below reasoned that *West* governed this case, notwithstanding its recognition that Mitchell's case occurred before AEDPA was passed.

No. 19-6070                           *Mitchell v. Genovese*                           Page 11

Interpreting our opinion in *Mitchell II* as holding that the TCCA's decision amounted to a
ruling on the merits of Mitchell's *Batson* and IAC-*Batson* claim, the decision below held that
*West* barred relief.  The decision quoted *Mitchell II*:

> As we pointed out in *Mitchell I,* and contrary to the finding of the district court on
> remand, it is clear from the record in the state court proceedings that Mitchell did
> not raise in his state court post-conviction petition either a *Batson* claim or a claim
> of ineffective assistance related to *Batson.*  At the hearing on that petition,
> however, he was permitted, over the objection of the State, to present evidence
> with regard to the *Batson* claim. The state court found no merit to any of his
> claims and dismissed the petition.  On appeal, Mitchell explicitly raised both
> a *Batson* claim and a *Batson*-related ineffective assistance of counsel claim.
>
> The state appellate court that reviewed the dismissal of Mitchell's post-conviction
> petition found that "the lack of evidence on the *Batson* issue does not justify this
> Court in upsetting the judgment entered in the original cases," and in *Mitchell
> I,* we held that to be a finding of fact that was "fairly supported" by the state court
> record.  *Id* at 578–79. The district court was not free to overrule our conclusion.

36 F. App'x at 753 n.3, 754.  In sum, the district court concluded: "[g]iven the Sixth Circuit's
conclusion that post-conviction counsel identified Petitioner's claim and the state appeals court
rejected the claim on the merits, and the *West* Court's determination that such a claim does not
fall within *Martinez*," Mitchell was precluded from seeking relief under Rule 60(b).

### c. Arguments on Appeal

In response to any claim that *Mitchell II* might be read to intimate that the state post-
conviction court decided his IAC-*Batson* claim on the merits, Mitchell points out that we have
repeatedly considered and treated his claim as procedurally defaulted.  *See, e.g.*, *Mitchell I*, 114
F.3d at 578 n.11, 579 n.13.  He notes that contemporaneous Tennessee procedural law required
that he present all claims for relief in his post-conviction petition, Tenn. Sup. Ct. R. 28 § 2(D),
§ 5(E)(3), and, as a result, the post-conviction court treated his *Batson* and IAC-*Batson* claims as
waived.

Alternatively, Mitchell argues that if we find he properly asserted a federal claim in state
court—through post-conviction counsel's direct examination of Mitchell and trial counsel and
the inclusion of his IAC-*Batson* claim on appeal to the TCCA—then *Keeney*'s extension of
*Coleman*'s cause-and-prejudice doctrine to insufficiently developed claims removes any doubt

that he falls within *Martinez*. Mitchell explains that *Coleman*'s cause doctrine was extended to his case when *Keeney* swept failure-to-develop claims under *Coleman*'s procedural default rule. The *Mitchell I* Court found that Mitchell had to show cause under *Keeney/Coleman*, and *Martinez* has retroactively modified *Coleman*'s cause doctrine. And so, Mitchell argues, "by modifying *Coleman*, *Martinez* now enables Mitchell to show the *Coleman* cause that this court demanded of him when denying relief in 1997 and 2002."

Mitchell asserts that *Moore*, *West*, and the other post-AEDPA caselaw cited by the Warden are inapposite to pre-AEDPA cases—that they stand only for the undisputed proposition that *Martinez* cannot be used post-AEDPA to circumvent *Pinholster*'s rule prohibiting federal habeas tribunals from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis. *See Moore*, 708 F.3d at 785. And in *West*, Mitchell notes, while the IAC claim was defaulted *on appeal* from the state court's post-conviction decision, West, unlike Mitchell, was permitted to present evidence below relating to the claim upon which the state post-conviction court based its merits ruling; in short, the claim was not in default. 790 F.3d at 696–98. In contrast, Mitchell's post-conviction counsel failed to present evidence to support his IAC-*Batson* claim. This is why *Mitchell I* remanded the case under *Keeney* for Mitchell to show cause. Mitchell asserts that his factual and procedural situation cannot be considered a merits determination akin to *West*.

The Warden argues that because Mitchell's IAC-*Batson* claim "was not procedurally defaulted, and was actually decided on the merits, *Martinez* provides no basis for relief." He contends that despite this court's consistent statement that Mitchell did not raise a *Batson* or IAC-*Batson* claim in his state post-conviction petition, *see e.g.*, *Mitchell II*, 36 F. App'x at 753 n.3, Mitchell did present a *Batson* claim in a 1988 *pro se* petition that challenged the racial composition of the jury pool in Maury County. Second, the Warden asserts that the TCCA's conclusion that "the lack of evidence on the *Batson* issue does not justify this Court in upsetting the judgment entered in the original cases," was, by its terms, a decision on the merits. Third, the Warden argues that because Tennessee has not invoked an independent and adequate state procedural rule that would foreclose review of Mitchell's claim on the merits, his claims are not procedurally defaulted. *See Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

#### d.  Analysis of Mitchell's IAC-Batson Claim

*Martinez* applies to Mitchell's case for several reasons.  First, we have repeatedly viewed post-conviction counsel's failure to bring an IAC-*Batson* claim in Mitchell's state habeas petition, and subsequent inability to rectify that mistake, to constitute a procedural default—and have declined to hear the merits of his claims on that basis.  Second, *Martinez* is an equitable decision meant to relieve habeas petitioners who, like Mitchell, are unable to present their merits contentions to any court because they received two constitutionally inadequate lawyers in a row.  Third, Sixth Circuit caselaw does not preclude a pre-AEDPA habeas petitioner from bringing a failure-to-develop IAC claim using *Martinez*.  Neither the fact that Mitchell challenged the racial composition of the jury pool nor that the State did not cite a specific procedural rule barring Mitchell's claim has any effect on this conclusion.

We necessarily begin with Mitchell's appeal from the denial of state post-conviction relief.  There, the TCCA reviewed the testimony Runde elicited from Mitchell and trial counsel about the prosecution's use of peremptory strikes, and Runde raised a written *Batson* claim for the first time.  Denying relief, the TCCA ruled:

> The record does not show how many peremptory challenges were used by the state or whether the district attorney general exercised peremptory challenges to excuse those who were not a member of the minority class involved in this complaint; nor does the record show whether there were other black persons left in the venire who might have been called to serve in this case.

> We conclude the lack of evidence on the *Batson* issue does not justify this Court upsetting the judgment entered in the original cases.

*TCCA Opinion*, 1991 WL 1351, at *1.  It is readily apparent that the TCCA denied Mitchell's *Batson* claim because, without knowing the basic factual history of the claim—how peremptory strikes were actually used—he could not "establish a prima facie case of purposeful discrimination in selection of the petit jury."  *Batson*, 476 U.S. at 96; *Mitchell I*, 114 F.3d at 578 ("Without that evidence, the state court could not have determined whether the peremptory challenges were exercised in a 'pattern' of strikes.").  The TCCA's holding was specifically predicated on a "lack of evidence" regarding the facts that pertain to a prima facie *Batson* claim. *TCCA Opinion*, 1991 WL 1351, at *1.  And when Runde sought to go back and provide the

missing facts relating to the race of the prospective jurors and the parties' use of peremptory strikes, his request for a further hearing on remand was not granted. *TCCA Opinion*, 1991 WL 1351, at *1. While the TCCA's one-page opinion did not cite a then-existing state law procedural rule, Mitchell's claims raised for the first time on appeal would have been waived under contemporaneous Tennessee law. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996).

In his brief before this court, the Warden contends that Mitchell's arguments challenging the racial composition of the jury pool in Maury County constitutes a *Batson* claim. Mitchell's jury pool claim, however, was not a *Batson* claim, let alone an IAC-*Batson* claim. *See Mitchell I*, 114 F.3d at 574 n.5 ("None of these is a *Batson* claim."). The jury pool challenge is a distinct issue: it did not purport to challenge the prosecution's use of peremptory strikes and it did not address purposeful race discrimination by the prosecution during selection of the petit jury. *Batson*, 476 U.S. at 96.

Even *Mitchell II*'s characterization of Mitchell's *Batson* and IAC-*Batson*, which is the Warden's only support for the assertion that the TCCA decided these claims on the merits, recognized that the IAC-*Batson* claim was "raised for the first time in Mitchell's appeal of his state court post-conviction petition." 36 F. App'x at 753. In sum, the TCCA had no *Batson* or IAC-*Batson* claim before it to adjudicate on the merits. It simply commented on the lack of evidence and denied relief.

The district court decision presently under review, however, concluded that the TCCA's holding should be considered a merits decision based on its determination that one of our opinions had characterized it as such. *Mitchell II* is the only possible support for this conclusion—and it is fleeting. There, we did note that the TCCA's decision declining to reopen Mitchell's case because of a lack of evidence was a "finding of fact," and that in *Mitchell I* we found such a finding was "fairly supported" by the state court record. *Mitchell II*, 36 F. App'x at 754 (quoting *Mitchell I,* 114 F.3d. at 578–79). But a review of *Mitchell I* adds necessary context. *Mitchell I* found it "fairly supported" that there was insufficient evidence in the record upon which the state courts could adjudicate Mitchell's *Batson* and IAC-*Batson* claim. *Mitchell I*, 114 F.3d at 578. The *Mitchell I* Court observed that "the state appellate court reviewed the evidence presented in the course of the hearing on the post-conviction petition, made findings of fact both

as to what the record did show and what it did not show in regard to the *Batson* claim," but then recognized that it was dismissed for "lack of evidence." *Mitchell I*, 114 F.3d at 576–77. The TCCA opinion itself confirms this reading; its comment about "lack of evidence" directly follows its list of requisite *Batson* evidence missing from the record. *TCCA Opinion*, 1991 WL 1351, at *1.

*Mitchell I* observed that the TCCA "found that there was insufficient evidence in the record to rule upon th[at] claim;" it did not hold that the state court heard and rejected Mitchell's *Batson* or IAC-*Batson* claims on the merits. *Id.* at 577. Our disposition confirms this: *Mitchell I* took away the new trial granted to Mitchell by the district court in 1995 because he was unable to show cause for his failure to bring the claim such that it could be decided on the merits. *Id.* at 579. The 2019 decision before us was thus mistaken to conclude that *Mitchell I* viewed the TCCA decision as a rejection of Mitchell's *Batson* or IAC-*Batson* claim on the merits and that it was not subject to procedural default. Quite the opposite. Noting that the state could have—but failed to—argue waiver, *id.* at 574 n.5, we held in *Mitchell I* that "petitioner's failure to develop in the state court proceedings the material facts necessary to support his [*Batson* and IAC-*Batson* claims] *is a procedural default*." 114 F.3d at 578 n.11 (emphasis added).

Since *Mitchell I*, we have called Mitchell's *Batson* and IAC-*Batson* claims procedurally defaulted. Most recently, in *Mitchell V*, we held that Mitchell's present Rule 60(b)(6) motion is not a habeas petition because it "merely asserts that a previous ruling which precluded a merits determination was in error." *Mitchell V*, No. 13-6614 at *5–6 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005) (giving procedural default as an example of a denial on non-merits grounds)). The *Mitchell V* Court concluded that, "under *Gonzalez v. Crosby*, Mitchell's argument that *Martinez v. Ryan* and *Trevino v. Thaler* demonstrate 'cause' to excuse procedural default of his *Batson* claim does not assert a 'claim' and therefore should not be interpreted as a second or successive habeas petition." *Id.* at *6. And the panel permitted Mitchell to move forward under Rule 60(b)(6).

We have not simply called Mitchell's claims procedurally defaulted; we have treated them as procedurally defaulted, beginning in 1997, under the ultimately mistaken view of a pre-AEDPA district court's authority to hold an evidentiary hearing. *Harries*, 417 F.3d at 635.

No. 19-6070                         *Mitchell v. Genovese*                         Page 16

Mitchell's "procedural default," the *Mitchell I* Court reasoned, "can be excused by the federal habeas court only upon a showing of cause and prejudice." 114 F.3d at 578 n.11. We therefore vacated the district court's dismissal of the claim and remanded the case to decide whether Mitchell had made an adequate cause-and-prejudice showing under *Keeney*. *Id.* at 579 n.13 ("If petitioner were able to demonstrate that he was entitled under *Keeney* to an evidentiary hearing on his *Batson* claim, and if he were then able to demonstrate that that claim had merit . . . , then he might also be able to prevail on this related ineffective assistance claim.") Recall that on appeal from the remand proceedings, we overturned habeas relief again; without citing *Coleman* directly, we reasoned that Mitchell was unable to show "cause for [his] failure to develop the record in the [state] post-conviction proceedings." *Mitchell II*, 36 F. App'x at 754 (emphasis omitted). Mitchell has since been unable to present his evidence of a *Batson* or IAC-*Batson* violation to any court—apart from the district court that heard the evidence in 1994 and granted *Batson* relief in 1995. Our court's treatment of Mitchell's IAC-*Batson* claim is fully consistent with the label we gave his claims; both support the conclusion that Mitchell's claim was procedurally defaulted.

   *Martinez* itself confirms its application to Mitchell's case. It recognized "as an equitable matter, that the initial-review collateral [here, the state post-conviction] proceeding, if undertaken without counsel or with ineffective counsel, may not [be] sufficient to ensure that proper consideration was given to a substantial claim." 566 U.S. at 14. The Court was careful not to announce a constitutional right to counsel in post-conviction proceedings, *id.* at 16, instead holding that "[t]o protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id.* at 9. This is because, the Supreme Court reasoned, "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id.* at 10. The Court continued, "[a]nd if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Id.* at 10–11. Mitchell is caught in that very box. The *Martinez* Court's equitable judgment that the provision of consecutive

constitutionally ineffective lawyers should not preclude a habeas petitioner from his day in court applies to Mitchell. *See also Buck*, 137 S. Ct. at 780.

*West*, *Moore*, and AEDPA decisions interpreting the application of *Martinez* to "failure-to-develop" claims do not alter this result. First, under the AEDPA version of § 2254(d), a federal habeas tribunal's review of the state court's constitutional analysis is limited to the record before the state court. *Pinholster*, 563 U.S. 180–81. Where *Pinholster* and AEDPA apply, our circuit has declined to permit habeas petitioners to use *Martinez* to supplement the record in "failure-to-develop" cases. *Moore*, 708 F.3d at 785. But, as the parties agree, *Pinholster* does not apply to Mitchell's pre-AEDPA habeas petition.[2] Those cases, moreover, involved other barriers to relief. In *Moore*, for example, the petitioner was permitted to raise his IAC claim on direct appeal and the Ohio Supreme Court rejected in it on the merits. *Id.* That scenario does not implicate *Martinez*. Similarly, in *West*, the petitioner brought his IAC claim in the initial-review collateral proceeding and received a ruling on the merits—post-conviction counsel simply failed to press the issue such that it was defaulted on appeal. 790 F.3d at 698. These cases are doubly inapposite because they (1) do not involve claims that were defaulted in the initial-review collateral proceeding, and (2) apply *Pinholster*/AEDPA's separate and independent limit on the availability of a federal evidentiary hearing. *West* and *Moore* do not preclude the application of *Martinez* to this case.

Mitchell's IAC-*Batson* claim was procedurally defaulted and the provision of two constitutionally inadequate lawyers operated to preclude any court from hearing his IAC-*Batson* claim on the merits. *Martinez* is applicable; Mitchell's case falls within the narrow set of cases for which *Martinez* opens the door to equitable relief.

---

[2]Mitchell argues in the alternative, that even if AEDPA applied to his case, *Pinholster* and § 2254(d) would not bar relief because the TCCA's decision did not constitute an adjudication of Mitchell's *Batson* and IAC-*Batson* claims on the merits. *See McClellen v. Rapelje*, 703 F.3d 344, 351 (6th Cir. 2013) (state court decision that made no "relevant factual findings" not an adjudication on the merits for purposes of § 2254(d)); *see also Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc) (Facts presented in federal court that "fundamentally alter the legal claim already considered by the state courts" entail a new claim that is considered procedurally defaulted but restorable through *Martinez* (assuming its conditions are met) notwithstanding *Pinholster*'s rule against supplementing the record on claims already presented to the state courts.). Despite the viability of this argument, because the parties agree that AEDPA does not apply to Mitchell's case, it need not be reached.

No. 19-6070                    *Mitchell v. Genovese*                    Page 18

### 2. Equitable Considerations for Relief under Rule 60(b)

*Martinez* applies but alone does not warrant relief.  *Miller*, 879 F.3d at 700.
Extraordinary circumstances must be present.  *Gonzalez*, 545 U.S. at 535.  These may include
"the risk of injustice to the parties" and "the risk of undermining the public's confidence in the
judicial process."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).  In
*Buck*, the underlying constitutional violation was severe: Buck's own psychology expert testified
"that one of the factors pertinent in assessing a person's propensity for violence was his race."
137 S. Ct. at 767.  The Supreme Court reasoned: "[r]elying on race to impose a criminal sanction
'poisons public confidence' in the judicial process.  It thus injures not just the defendant, but 'the
law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the
processes of our courts.'  Such concerns are precisely among those we have identified as
supporting relief under Rule 60(b)(6)."  *Buck*, 137 S. Ct. at 778 (first quoting *Davis v. Ayala*,
135 S. Ct. 2187, 2208 (2015); then quoting *Rose v. Mitchell*, 443 U.S. 545, 556 (1979)).

At this stage in Mitchell's case, the Warden no longer disputes that Mitchell was tried by
an all-white jury and that Hattie Alderson was stricken from the venire by the prosecution in
violation of *Batson v. Kentucky*.  The district court heard the evidence of this *Batson* violation in
1994—the only court ever to do so—and granted Mitchell relief.  We overturned that relief in an
opinion characterized as a "judicial travesty" by the dissent, an opinion that we have since
concluded misapplied binding law.  *Abdur'Rahman*, 226 F.3d at 705–06; *Harries*, 417 F.3d at
635.  Our original error there was to reason, misguidedly, that the district court did not have the
authority to hold an evidentiary hearing.  And we did so under *Keeney*, treating the case as
procedurally defaulted and thus requiring Mitchell to show cause and prejudice.  *Martinez*, as
discussed above, now provides Mitchell with an avenue to show that cause.  Prejudice is clear: a
district court has already granted habeas relief on Mitchell's *Batson* claim, and separately, on his
IAC-*Batson* claim.  But for our error in *Mitchell I,* the remedy granted to Mitchell in 1995 would
have resulted in Mitchell receiving a new trial free of unconstitutional race discrimination.
*Martinez* opens the door to that remedy here, 25 years later.

It is time—past time—that we rectify the "judicial travesty" that is Mitchell's sentence.
*Mitchell I*, 114 F.3d at 583 (Keith, J., dissenting).  Striking black prospective jurors on the basis

of race "'poisons public confidence' in the judicial process," *Buck*, 137 S. Ct. at 778 (quoting *Ayala*, 135 S. Ct. at 2208), because it suggests the justice system is complicit in racial discrimination. Denial of the opportunity to seek relief in such situations undermines respect for the courts and the rule of law. *Mitchell I* refused to review the merits of Mitchell's *Batson* and IAC-*Batson* claims absent a showing of cause. *Martinez* removes that barrier. Mitchell's case also evidences the danger *Martinez* sought to address—that the provision of two consecutive constitutionally ineffective lawyers would trap habeas petitions in a procedural double-bind through which they would be consigned to prison without a court ever hearing the merits of their constitutional claim. *Buck* confirms that Rule 60(b)(6) can be used to reopen cases that present the "risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Buck*, 137 S. Ct. at 778. Mitchell's case presents both; it establishes extraordinary circumstances and shows that denial of his Rule 60(b)(6) motion was error. *Id.* at 767.

### III. CONCLUSION

We **REVERSE** the decision below and reopen Mitchell's habeas petition under Rule 60(b)(6), **GRANT** Mitchell a conditional writ of habeas corpus, that will result in Mitchell's release from prison unless the State of Tennessee commences a new trial against him within 180 days from the date of this opinion, and **REMAND** the case for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-6070

JOE CLARK MITCHELL,

     Petitioner - Appellant,

     v.

KEVIN GENOVESE, Warden,

     Respondent - Appellee.

**FILED**
Sep 04, 2020
DEBORAH S. HUNT, Clerk

Before: MERRITT, GUY, and STRANCH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Joe Clark Mitchell's Rule 60(b) motion is REVERSED, a conditional writ of habeas corpus is GRANTED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk